# 15-cv-03828 (GBD)

## United States District Court

*for the*

## Southern District of New York

_____

OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF ARCAPITA BANK B.S.C.(C), ET AL.,

*Appellant,*

—against—

BAHRAIN ISLAMIC BANK,

*Appellee.*

_____

ON APPEAL FROM THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK (LANE, J.)

IN RE ARCAPITA BANK B.S.C.(C), *ET. AL.*, BANKR. CASE NO. 12-11076

### BRIEF FOR APPELLANT

MILBANK, TWEED, HADLEY & M<sup>C</sup>CLOY LLP
DENNIS F. DUNNE
EVAN R. FLECK
ANDREW M. LEBLANC
28 Liberty Street
New York, New York 10005-1413
(212) 530-5000
aleblanc@milbank.com

*Attorneys for the Official Committee of Unsecured Creditors of Arcapita Bank B.S.C.(c), et al.*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ..................................................................................... 1

JURISDICTION ............................................................................................................. 3

STATEMENT OF THE ISSUES...................................................................................... 3

STATEMENT OF THE CASE........................................................................................ 4

SUMMARY OF ARGUMENT ...................................................................................... 8

ARGUMENT ............................................................................................................... 9

I.       THE BANKRUPTCY COURT ERRED AS A MATTER OF LAW IN
         REFUSING TO EXERCISE PERSONAL JURISDICTION OVER THE
         BANKS. ......................................................................................................... 10

         A.       The Bankruptcy Court Erred in Concluding That the Banks Lacked
                  Minimum Contacts With the United States. ........................................... 11

         B.       The Bankruptcy Court Erred In Concluding That the Committee's Claims
                  Against the Banks Did Not "Arise From" the Banks' Minimum Contacts. ......... 16

         C.       The Bankruptcy Court Erred In Concluding That Tadhamon Is Subject to
                  a Different Jurisdictional Inquiry Than BisB........................................... 18

         D.       Exercising Personal Jurisdiction Over the Banks Would Not Offend
                  Traditional Notions of Fair Play and Substantial Justice....................... 19

II.      THE BANKRUPTCY COURT ABUSED ITS DISCRETION IN DENYING
         THE COMMITTEE'S REQUEST FOR JURISDICTIONAL DISCOVERY. ............... 20

III.     THE BANKRUPTCY COURT ERRED AS A MATTER OF LAW IN
         DISMISSING THE COMMITTEE'S COMPLAINTS "WITH PREJUDICE." .............. 21

CONCLUSION.......................................................................................................... 23

CERTIFICATE OF COMPLIANCE............................................................................. 1

CERTIFICATE OF SERVICE ...................................................................................... 1

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aerotel, Ltd. v. Sprint Corp.*,
    100 F. Supp. 2d 189 (S.D.N.Y. 2000)......................................................................20

*Arnold Graphics Industries, Inc. v. Independent Agent Center Inc.*,
    775 F.2d 38 (2d Cir. 1985)................................................................................20

*Asahi Metal Industry Co., Ltd. v. Superior Court of California*,
    480 U.S. 102 (1987).....................................................................................9, 19

*Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*,
    171 F.3d 779 (2d Cir. 1999)............................................................................10, 17

*Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*,
    305 F.3d 120 (2d Cir. 2002)............................................................................19, 20

*Best Van Lines, Inc. v. Walker*,
    490 F.3d 239 (2d Cir. 2007)..................................................................................4

*Burger King Corp. v. Rudzewicz*,
    471 U.S. 462 (1985)........................................................................................16

*Correspondent Services Corp. v. J.V.W. Investments Ltd.*
    120 F. Supp. 2d 401 (S.D.N.Y. 2000)..............................................................12, 13, 15

*CutCo Industries, Inc. v. Naughton*,
    806 F.2d 361 (2d Cir. 1986)................................................................................18

*EF Operating Corp. v. American Buildings*,
    993 F.2d 1046 (3d Cir. 1993)...............................................................................22

*Eldesouky v. Aziz*,
    No. 11-CV-6986 (JLC), 2014 WL 7271219 (S.D.N.Y. Dec. 19, 2014)...............11, 12, 15, 20

*Global Gold Mining, LLC v. Ayvazian*,
    No. 13-4759-CV, 2015 WL 1881361 (2d Cir. Apr. 27, 2015) ................................22

*Hollander v. Sandoz Pharmaceuticals Corp.*,
    289 F.3d 1193 (10th Cir. 2002)...........................................................................22

*Intera Corp. v. Henderson*,
    428 F.3d 605 (6th Cir. 2005) ..............................................................................22

**Page(s)**

*Leviton Manufacturing Co. v. Reeve*,
  942 F. Supp. 2d 244 (E.D.N.Y. 2013), amended (Mar. 23, 2013) ............................................ 4

*Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*,
  732 F.3d 161 (2d Cir. 2013) ............................................................................................ 4, 13, 14

*Licci v. Lebanses Canadian Bank, SAL*,
  20 N.Y.3d 327 (2012) ................................................................................................................ 18

*Marine Midland Bank, N.A. v. Miller*,
  664 F.2d 899 (2d Cir. 1981) ...................................................................................................... 20

*Metropolitan Life Insurance Co. v. Robertson-Ceco Corp.*,
  84 F.3d 560 (2d Cir. 1996) ..................................................................................................... 9, 10

*Nafziger v. McDermott International, Inc.*,
  467 F.3d 514 (6th Cir. 2006) ..................................................................................................... 22

*Parke-Bernet Galleries, Inc. v. Franklyn*,
  256 N.E. 2d 506 (N.Y. 1970) ..................................................................................................... 15

*Picard v. Chais (In re Bernard L. Madoff Investment Securities LLC)*,
  440 B.R. 274 (Bankr. S.D.N.Y. 2010) ........................................................................... 12, 19, 20

*Posner v. Essex Insurance Co.*,
  178 F.3d 1209 (11th Cir. 1999) ................................................................................................. 22

*Pramer S.C.A. v. Abaplus International Corp.*,
  76 A.D. 3d 89 (2010) ............................................................................................................ 15, 16

*Robinson v. Overseas Military Sales Corp.*,
  21 F.3d 502 (2d Cir. 1994) ........................................................................................................ 21

*Rushaid v. Pictet & Cie*,
  2014 N.Y. Misc. LEXIS 3888 (N.Y. Sup. Ct. Aug. 26, 2014) ............................................. 14, 15

*Seaweed, Inc. v. DMA Product & Design & Marketing LLC*,
  219 F. Supp. 2d 551 (S.D.N.Y. 2002) ....................................................................................... 22

*Securities Investor Protection Corp. v. Bernard L. Madoff Investment Securities,
  LLC (In re Bernard L. Madoff)*,
  460 B.R. 106 (Bankr. S.D.N.Y. 2011) ..................................................................................... 9, 10

*Smith v. United States*,
  554 F. App'x 30 (2d Cir. 2013) .................................................................................................. 22

*U.S. Lines, Inc. v. GAC Marine Fuels Ltd. (In re McLean Industries, Inc.)*,
  68 B.R. 690 (Bankr. S.D.N.Y. 1986) ......................................................................................... 20

**Page(s)**

*Vandor, Inc. v. Militello*,
    301 F.3d 37 (2d Cir. 2002)................................................................22

*Webber v. Michela*,
    633 F.2d 518 (8th Cir. 1980) ........................................................22

*Wilson v. Dantas*,
    9 N.Y.S.3d 187 (N.Y. App. Div. 2015) ......................................17

**Statutes**

11 U.S.C. § 542..............................................................................7, 17

11 U.S.C. § 547....................................................................................7

28 U.S.C. § 157(b) ..............................................................................3

28 U.S.C. § 158(a) ..............................................................................3

28 U.S.C. 1334 ....................................................................................3

**Other Authorities**

Fed. R. Civ. P. 12(b)(2)......................................................................4

Fed. R. Civ. P. 41(b) ....................................................................21, 22

NY CPLR § 302 ............................................................................12, 18

## PRELIMINARY STATEMENT

This appeal arises out of a decision of the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") wrongly declining to exercise personal jurisdiction over foreign defendant banks where (i) the banks purposefully structured, directed, and executed a transaction using multiple U.S. bank accounts and (ii) the causes of action underlying the now-dismissed lawsuits arise directly from that transaction. If upheld, the decision would permit foreign entities to deliberately plan and execute an unlawful wire transfer using the U.S. banking system without consequence in the United States. This is not the law and, indeed, is at odds with an unbroken line of cases standing for the proposition that even a single bank transaction in the United States is sufficient to confer personal jurisdiction over a defendant where—as here—the plaintiff's claims arise from that transaction. The Bankruptcy Court's decision, which is reviewed *de novo* on appeal, must be reversed.

The facts of the cases are straightforward. Arcapita Bank B.S.C.(c) ("Arcapita") transferred approximately $30 million to the defendant-appellees, Bahrain Islamic Bank ("BisB") and Tadhamon Capital B.S.C. ("Tadhamon," and together with BisB, the "Banks")[1] in separate transactions using U.S. bank accounts. These transfers were in amounts virtually equal to existing debts owed by Arcapita to the Banks and occurred just days before Arcapita filed for chapter 11 protection. The transfers enabled the Banks to receive full payment on these debts to the detriment of Arcapita's other creditors who received pennies on the dollars owed to them. The Official Committee of Unsecured Creditors of Arcapita (the "Committee") commenced

---

[1]    The Committee appealed the decision in the BisB action separately from its appeal in the Tadhamon action. This Court later accepted the appeals as related. (*See* Case No. 15-cv-03829 [7/7/2015 Dkt. Entry].) For this reason, and because the appeals are taken from the same Bankruptcy Court decision, the Committee has submitted a joint appellate brief for both appeals.

adversary proceedings against the Banks to recover the transferred funds as, among other things, avoidable preferential transfers and assets subject to turnover under the Bankruptcy Code.

In support of personal jurisdiction, the Committee alleged that (i) the Banks negotiated contracts that contemplated the use of Arcapita's U.S. bank account and U.S. bank accounts designated by the Banks; (ii) Arcapita transferred the funds to the U.S. bank accounts in the precise manner directed by the Banks (down to the Banks' provision of access codes to effectuate the transfers); and (iii) the transfers themselves *are* the avoidable preferential transfers alleged by the Committee and form a fundamental component of the Committee's turnover claims.  These allegations satisfy well-settled standards for exercising "specific" personal jurisdiction over a foreign defendant.

The Bankruptcy Court, however, held that the Banks' "quality of contact" with the United States was insufficient to support personal jurisdiction as the Banks were "passive recipients" of a single transfer of funds that stayed in the United States for only a short while.  In reaching this erroneous conclusion, the Bankruptcy Court departed from clear legal precedent, improperly focusing on the ultimate destination of the transferred funds, the Banks' location, and foreign choice-of-law provisions in the agreements that led to the bank transfers—considerations that are irrelevant to the jurisdictional inquiry given the Banks' deliberate and purposeful use of the U.S. banking system.  The Bankruptcy Court further erred in concluding that the Committee's claims do not arise from the transfers, even though the transfers lie at the very core of the claims.

Compounding its errors, the Bankruptcy Court also wrongfully refused to permit the Committee to take narrow and limited discovery, handcuffing the Committee's ability to cure the perceived jurisdictional defects.  Such discovery may have allowed the Committee to

uncover facts supporting the exercise of jurisdiction under the standards articulated by the Bankruptcy Court and should have been permitted.

Finally, the Bankruptcy Court erred by dismissing the adversary proceedings "with prejudice," even though it concluded that it was powerless to adjudicate the merits of the Committee's claims. This decision is contrary to well-settled Second Circuit precedent which clearly dictates that all decisions granting a motion to dismiss are *necessarily* "without prejudice." In the event this Court upholds the Bankruptcy Court's dismissal of the adversary proceedings, this aspect of the dismissal order must be overturned so that the Committee may re-commence litigation against the Banks in this or another forum under different jurisdictional circumstances.

## JURISDICTION

The Bankruptcy Court had jurisdiction under 28 U.S.C. § 1334 over the adversary proceedings. The adversary proceedings are core proceedings under 28 U.S.C. § 157(b) to the extent that they involve, among other things, claims for turnover of estate property and the recovery of preferential transfers.

On May 12, 2015, the Committee filed timely notices of appeal from the dismissal orders, which constituted final orders of the Bankruptcy Court. This Court has jurisdiction over the appeals pursuant to 28 U.S.C. § 158(a).

## STATEMENT OF THE ISSUES

1.    WHETHER THE BANKRUPTCY COURT ERRED IN GRANTING THE BANKS' MOTIONS TO DISMISS FOR LACK OF PERSONAL JURISDICTION IN ACTIONS ASSERTING CLAIMS FOR, AMONG OTHER THINGS, BREACH OF CONTRACT, PREFERENTIAL TRANSFER, AND TURNOVER, WHERE THE CONDUCT GIVING RISE TO THOSE CLAIMS—TRANSFERS OF FUNDS BETWEEN U.S. BANK

ACCOUNTS—WAS DIRECTED BY THE BANKS AND OCCURRED ENTIRELY WITHIN THE UNITED STATES. THIS ISSUE IS SUBJECT TO *DE NOVO* REVIEW.[2]

      2.    WHETHER THE BANKRUPTCY COURT ABUSED ITS DISCRETION IN REFUSING TO ALLOW THE COMMITTEE TO ENGAGE IN LIMITED, NARROWLY TAILORED JURISDICTIONAL DISCOVERY, DESPITE THE COMMITTEE'S PROFFER THAT DISCOVERY MAY YIELD (I) ADDITIONAL FACTS DEMONSTRATING SPECIFIC JURISDICTION OVER THE BANKS AND/OR (II) ADDITIONAL CONTACTS THAT THE BANKS HAVE OR HAVE HAD WITHIN THE UNITED STATES THAT MAY SUBJECT THEM TO THE GENERAL JURISDICTION OF THE BANKRUPTCY COURT. THIS ISSUE IS SUBJECT TO REVIEW FOR ABUSE OF DISCRETION.[3]

      3.    WHETHER THE BANKRUPTCY COURT ERRED IN DISMISSING EACH COMPLAINT "IN ITS ENTIRETY WITH PREJUDICE," WHERE THE BANKRUPTCY COURT EXPRESSLY FOUND THAT IT LACKED PERSONAL JURISDICTION OVER THE BANKS, AND THEREFORE WAS POWERLESS TO PROCEED TO AN ADJUDICATION ON THE MERITS OF THE COMMITTEE'S CLAIMS. THIS ISSUE IS SUBJECT TO *DE NOVO* REVIEW.[4]

## STATEMENT OF THE CASE

      Arcapita and its affiliated debtors initiated chapter 11 proceedings in the Bankruptcy Court on March 19, 2012. Prior to these proceedings, Arcapita functioned as a wholesale investment bank that employed more than 250 people and had offices across the

---

[2]    *See, e.g., Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 167 (2d Cir. 2013) (*de novo* review applicable to lower court's Rule 12(b)(2) dismissal for lack of personal jurisdiction over the defendant).

[3]    *See Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 255 (2d Cir. 2007) ("We review for abuse of discretion the district court's decision not to permit jurisdictional discovery because [plaintiff] failed to establish a prima facie case of personal jurisdiction.") (citation omitted).

[4]    *See, e.g., Licci*, 732 F.3d at 167 (dismissal for lack of personal jurisdiction subject to de novo review); *see also Leviton Mfg. Co. v. Reeve*, 942 F. Supp. 2d 244, 273 (E.D.N.Y. 2013), amended (Mar. 23, 2013) ("Where the court is without jurisdiction, it is improper to make any order in the cause except to dismiss the suit . . . A dismissal of an action or complaint cannot be with prejudice and the order should not contain a provision to that effect where it is on the grounds of want of jurisdiction.") (quoting 35B C.J.S. Federal Civil Procedure § 844).

globe.  The Committee was appointed by the Bankruptcy Court to represent the interests of Arcapita's unsecured creditors.[5]

These appeals arise from two adversary proceedings commenced by the Committee, on behalf of the Debtors, to recover more than $30 million in funds that the defendant-appellees wrongfully received from Arcapita and have refused to return.  All proceeds recovered in the adversary proceedings will serve to benefit Arcapita's unsecured creditors in accordance with its confirmed chapter 11 plan.

**The Placement Agreements and Transfers to Banks**

In March 2012, Arcapita entered into separate investment agreements (the "Placement Agreements") with BisB and Tadhamon, two Bahraini banks that were creditors of Arcapita at the time.  The Placement Agreements called for Arcapita to deposit a certain amount of funds with a Bank (each, a "Placement") in exchange for the Bank's corresponding obligation to invest those funds and provide a fixed return or profit on an agreed-upon maturity date. (Appendix ("App.") 003 (BisB Compl. ¶¶ 1-2); App. 017 (Tadhamon Compl. ¶¶ 1-2).)

To carry out the Placement Agreements, the Banks instructed Arcapita to transfer the investment amounts from Arcapita's U.S. bank account at JP Morgan Chase Bank to U.S. correspondent bank accounts designated by the Banks.  (App. 008 (BisB Compl. ¶¶ 27-28); App. 022 (Tadhamon Compl. ¶¶ 27-28).)  On the Placement dates, Arcapita—at the Banks' direction—"placed" an aggregate of $30 million in these U.S. bank accounts.  (App. 008 (BisB Compl. ¶ 28); App. 022 (Tadhamon Compl. ¶ 28).)  The specific mechanics of these Placements were as follows:

- ***BisB:***  On March 14, 2012, BisB instructed Arcapita to transfer $10 million from its JP Morgan Chase Bank account in New York directly to BisB's JP Morgan

---

[5]     Because the Committee is a statutory body representing a group of creditors, it has not included herein a corporate disclosure statement in accordance with Rule 8012 of the Federal Rules of Bankruptcy Procedure.

Chase Bank account in New York.  (App. 087-091 (Bassett Decl. at Exs. D, E).)
BisB provided Arcapita with its account number and the access code necessary to
effectuate the transfer.  (*Id.*)  Arcapita transferred the funds to BisB's New York
bank account as directed.  (App. 008 (Compl. ¶ 28).)

- ***Tadhamon:***  On March 15, 2012, Tadhamon instructed Arcapita to transfer $20
million from its account at JP Morgan Chase Bank to an account at HSBC Bank
in New York owned by Khaleeji Commercial Bank B.S.C. ("Khaleeji"),
Tadhamon's bank in Bahrain.  (App. 066-69 (Rashdan Decl. at Exs. B, C).)
Tadhamon provided Arcapita with the access codes necessary to effectuate the
transfers.  Arcapita transferred two payments of $10 million each to the HSBC
Bank account as directed by Tadhamon.  (*Id.*)

On March 19, 2012, just days after the U.S. bank-to-U.S. bank transfers, Arcapita

filed for chapter 11 protection in the Bankruptcy Court.  (App. 008 (BisB Compl. ¶ 30); App.

022 (Tadhamon Compl. ¶ 31).)

On the applicable maturity dates for the Placements,[6] the Banks failed to remit

any of the proceeds owed to Arcapita, despite being contractually obligated to do so.  (App. 008

(BisB Compl. ¶¶ 27, 32); App. 022-23 (Tadhamon Compl. ¶¶ 32-35).)  On April 30, 2012,

Arcapita delivered demand letters to the Banks.  (App. 008-09 (BisB Compl. ¶ 33); App. 023-24

(Tadhamon Compl. ¶ 37).)  In response, each Bank asserted that it was withholding all or nearly

all of the funds as a setoff against existing debts in nearly identical amounts owed by Arcapita to

the Banks (the "Antecedent Debts").[7]  (App. 009 (BisB Compl. ¶ 34); App. 024 (Tadhamon

Compl. ¶ 38).)  Neither of the Banks requested relief from the automatic stay to effect these

purported setoffs.  (App. 009 (BisB Compl. ¶ 35); App. 024 (Tadhamon Compl. ¶ 39).)  At

---

[6]     The BisB Placement matured on March 29, 2012, while the Tadhamon Placements matured on March 30,
2012 and April 16, 2012, respectively.  (App. 003 (BisB Compl. ¶ 2); App. 017 (Tadhamon Compl. ¶ 2).)

[7]     At the time of the BisB Placement, Arcapita owed nearly $10 million in unmatured debt to BisB as a result
of certain investment transactions entered into by the parties beginning in December 2011.  (App. 003 (BisB Compl.
¶ 3).)  At the time of the Tadhamon Placement, Arcapita owed more than $18 million in unmatured debt to
Tadhamon as result of certain investment transactions entered into by the parties between September 2009 and
January 2012.  (App. 017 (Tadhamon Compl. ¶ 3).)

present, BisB owes Arcapita more than $10 million, and Tadhamon owes Arcapita more than

$18 million.  (App. 003 (BisB Compl. ¶ 2); App. 017 (Tadhamon Compl. ¶ 2).)

**Procedural History of the Adversary Proceedings**

   In June 2013, the Bankruptcy Court confirmed the proposed plan of

reorganization in Arcapita's bankruptcy.  (*See Order Confirming the Second Amended Joint Plan*

*of Reorganization of Arcapita Bank B.S.C.(c) and Related Debtors With Respect to Each Debtor*

*Other Than Falcon Gas Storage Company, Inc. Under Chapter 11 of the Bankruptcy Code* [ECF

No. 1262].)  The Bankruptcy Court subsequently entered an order granting the Committee leave,

standing, and the authority to prosecute certain avoidance claims, including the claims against

the Banks [ECF No. 1411].

   On August 26, 2013, the Committee commenced these adversary proceedings

against the Banks to recover the outstanding balances under the Placement Agreements.  (*See*

App. 001-14 (BisB Compl.); App. 015-29 (Tadhamon Compl.).)  The adversary proceedings

asserted claims for breach of contract and turnover of estate property under section 542 of the

Bankruptcy Code based on the Banks' failure to return the placed funds on the applicable

maturity dates, as required by the Placement Agreements.  (*See* App. 009-11 (BisB Compl.

¶¶ 38-48); App. 024-26 (Tadhamon Compl. ¶¶ 42-53).)  Because the Banks refuse to return the

placed funds to Arcapita, they remain in wrongful possession of estate property that is subject to

turnover.  (App. 010 (BisB Compl. ¶ 46); App. 026 (Tadhamon Compl. ¶ 51).)

   The adversary proceedings also included claims for the avoidance of preferential

transfers.  (App. 011-12 (BisB Compl. ¶¶ 49-57); App. 026-27 (Tadhamon Compl. ¶¶ 54-62).)

Arcapita and the Banks entered into the Placements while Arcapita was insolvent, less than 90

days before its chapter 11 filing, for the improper purpose of paying down the Antecedent Debts.

(*See* App. 003, 009-69 (BisB Compl. ¶¶ 1, 38-69); App. 017, 024-28 (Tadhamon Compl. ¶¶ 1, 42-73).)  As such, the Placement transfers are avoidable under section 547(b) of the Bankruptcy Code and recoverable from the Banks pursuant to section 550(a) of the Bankruptcy Code.  (App. 011 (BisB Compl. ¶¶ 54-56); App. 026-27 (Tadhamon Compl. ¶¶ 59-61).)

On November 18, 2013, the Banks moved to dismiss the adversary complaints, asserting that (i) the Bankruptcy Court lacked personal jurisdiction over the Banks; (ii) the Committee's claims were barred by the presumption against extraterritoriality; and (iii) the claims were barred by principles of international comity.  (*See generally* App. 030-76 (Mots. to Dismiss).)  The parties then engaged in briefing and oral argument.

On April 17, 2015, the Bankruptcy Court issued its *Memorandum of Decision*, in which it addressed both cases together.  (App. 268-69 (Dec. at 2).)  The Bankruptcy Court granted the motions to dismiss for lack of personal jurisdiction.  (*Id.*)  It did not base its decision on presumption of extraterritoriality or international comity grounds.  (*Id.*)  On April 28, 2015, the Bankruptcy Court entered an *Order Granting Motion to Dismiss the Complaint* [BisB ECF No. 24; Tadhamon ECF No. 22], denying the Committee's request for jurisdictional discovery and stating that the Committee's claims were "dismissed with prejudice."  This appeal followed.

## SUMMARY OF ARGUMENT

The Bankruptcy Court erred in dismissing the Committee's actions for want of personal jurisdiction.  The Bankruptcy Court order should be reversed for at least three reasons:

*First,* the Committee sustained its burden of making a *prima facie* showing that the Banks are subject to the Bankruptcy Court's jurisdiction.  The exercise of jurisdiction over the Banks is appropriate because the Banks purposefully availed themselves of the benefits of the

U.S. banking system in directing the U.S. bank account transfers, and the claims asserted by the Committee arise directly from those transfers.

*Second*, even if the Committee failed to make the requisite showing of jurisdiction over the Banks (which is not the case), the Bankruptcy Court abused its discretion by refusing to allow the Committee to engage in limited, narrowly tailored discovery to identify additional facts that may cure any purported jurisdictional deficiencies.

*Finally*, the Bankruptcy Court erred as a matter of law when it dismissed the complaints "with prejudice" despite having no adjudicatory authority over the merits of the Committee's claims.  It is well-settled law that following a motion to dismiss for lack of personal jurisdiction, the plaintiff must be allowed to recommence litigation against the defendant in the same or another forum under different jurisdictional circumstances.

## ARGUMENT

The inquiry into a bankruptcy court's exercise of jurisdiction consists of two steps.  <u>First</u>, the bankruptcy court must determine whether the defendant has "the requisite minimum contacts with the United States at large," rather than merely with the forum state.  *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec., LLC (In re Bernard L. Madoff)*, ("<u>*Madoff*</u>") 460 B.R. 106, 117 (Bankr. S.D.N.Y. 2011) (internal quotation omitted).  <u>Second</u>, the court must determine whether exercising personal jurisdiction over the defendant will offend "traditional notions of fair play and substantial justice."  *Asahi Metal Indus. Co., Ltd. v. Super. Ct. Cal.*, 480 U.S. 102, 113 (1987).  To defeat a motion to dismiss for lack of personal jurisdiction, a plaintiff need only make a *prima facie* showing that this jurisdictional inquiry is satisfied.  *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 566 (2d Cir. 1996).

"Minimum contacts" exist over a foreign defendant for purposes of specific jurisdiction[8] where the defendant "purposefully direct[s] his activities at the residents of [the] forum" and the underlying cause of action "arise[s] out of or relate[s] to those activities." *Madoff*, 460 B.R. at 117 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473 (1985)).  It is sufficient that "there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum . . . thus invoking the benefits and protections of its laws." *Id.* (citation omitted).  Critically, "[t]he defendant's activity need not have taken place within the forum, and ***a single transaction with the forum will suffice***." *Id.* (citations omitted) (emphasis added); *see also, e.g.*, *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, ("*BBL I*") 171 F.3d 779, 787 (2d Cir. 1999) ("[a] single transaction would be sufficient to fulfill this requirement [of purposeful availment], so long as the relevant cause of action also arises from that transaction.") (internal citations and quotations omitted).

## I.    THE BANKRUPTCY COURT ERRED AS A MATTER OF LAW IN REFUSING TO EXERCISE PERSONAL JURISDICTION OVER THE BANKS.

The Bankruptcy Court erred in holding that it could not exercise personal jurisdiction over defendants who deliberately availed themselves of the U.S. banking system to effectuate unlawful wire transfers that are at the very root of the underlying litigation.  In so holding, the Bankruptcy Court (i) failed to properly consider the quality of the Banks' contacts with the United States apart from the broader transaction involving Bahraini banks; (ii) ignored the inextricable nexus between the Banks' use of the U.S. bank accounts and the Committee's

---

[8]    In conducting the minimum contacts inquiry, courts distinguish between 'specific' jurisdiction and 'general' jurisdiction.  *Metro. Life Ins. Co.*, 84 F.3d at 567-68.  In connection with the motions to dismiss, the Committee alleged that specific jurisdiction exists over the Banks, and the Bankruptcy Court analyzed the motions in that context.  The Committee reserved its right to assert the existence of general jurisdiction over the Banks should it discover additional information to support that determination.  As discussed in section II *infra*, the Committee should be entitled to obtain jurisdictional discovery and, if it finds evidence supporting general jurisdiction, recommence litigation against the Banks in the Bankruptcy Court or another forum.

claims; and (iii) with respect to Tadhamon, incorrectly concluded that it was not subject to personal jurisdiction simply because it did not own the U.S. bank account that it used to carry out the transactions.  Each of the foregoing errors warrants reversal of the Bankruptcy Court decision.

> **A.**   **The Bankruptcy Court Erred in Concluding That the Banks Lacked Minimum Contacts With the United States.**

Although the Bankruptcy Court acknowledged that the Banks' use of the U.S. bank accounts "is admittedly a contact" with the United States, it held that the contact was, as a matter of law, "too weak to satisfy due process requirements."  (App. 280 (Dec. at 13).)  The Bankruptcy Court rested this holding on (i) the notion that the "use of th[e] correspondent bank account was neither the beginning nor end of the Placement, but rather a transitory intermediate step [that] ended with the funds being transferred out of the country" (App. 279 (Dec. at 12)); and (ii) its conclusion that the Banks' "mere knowing receipt of funds at a correspondent bank account is insufficient to establish jurisdiction."  (App. 280-81 (Dec. at 13-14).)  This analysis misapplied the minimum contacts inquiry.  The Banks availed themselves of the U.S. banking system by structuring and directing the transfer of funds through U.S. bank accounts, thereby invoking the benefits and protections of U.S. laws and satisfying the minimum contacts test— regardless of where the funds went next.

This conclusion is amply supported by case law in this District.  This Court's recent decision in *Eldesouky v. Aziz*, No. 11-CV-6986 (JLC), 2014 WL 7271219, at *8 (S.D.N.Y. Dec. 19, 2014), is particularly instructive.[9]  In that case, Egyptian plaintiffs brought suit in the Southern District of New York against Pyramid, an out-of-state corporation, alleging, among other things, breach of contract related to the purchase and shipment of grain from Canada.  2014

---

[9]       The Bankruptcy Court did not address the *Eldesouky* case in its decision.

WL 7271219, at *3.  Recognizing that "the only connection" the case had to New York was "the Manhattan bank account[] held by Pyramid" into which the plaintiffs made a wire transfer of $35,500, the Court nevertheless found that ***this single wire transfer was sufficient to establish personal jurisdiction where the lawsuit sought return of the transferred funds***:

> [T]he money that Plaintiffs wired pursuant to their contract with General Trade, and the return of which they seek by this lawsuit, was sent to Pyramid's account in New York.  These facts are sufficient to establish jurisdiction under New York's long-arm statute.

*Id.* at *7.[10]

The *Eldesouky* Court did not proceed to consider where, if anywhere, the transferred funds went next.  Such a consideration would have been irrelevant to the Court's analysis, as a subsequent transfer would not retroactively weaken the minimum contacts that the Court already recognized.  This is precisely the situation here.  The money that Arcapita transferred pursuant to the Placement Agreements, the return of which the Committee seeks by these lawsuits, went to the Banks' accounts in the United States, per the Banks' instructions.  As in *Eldesouky,* these facts alone are sufficient to establish personal jurisdiction.

This Court reached the same conclusion in *Correspondent Services Corp. v. J.V.W. Investments Ltd.*  120 F. Supp. 2d 401, 403 (S.D.N.Y. 2000).  In *Correspondent Services,* J.V.W. Investments Ltd. ("JVW"), a corporation organized under the laws of the Commonwealth of Dominica, sought to recover part of a $10 million investment it transferred into a New York correspondent bank account of the defendant Bahamian bank, Suisse Security Bank and Trust,

---

[10]   As recognized by the Bankruptcy Court, New York's long-arm statute, codified under NY CPLR § 302, is narrower than its federal counterpart, such that a foreign defendant found to be subject to specific jurisdiction in New York is necessarily subject to specific jurisdiction in the United States under federal due process standards. *See, e.g., Picard v. Chais (In re Bernard L. Madoff Inv. Sec. LLC), ("Chais"),* 440 B.R. 274, 280-81 (Bankr. S.D.N.Y. 2010) (noting that, as a practical matter, because "section 302 of the CPLR does not reach as far as the Constitution permits, due process will be satisfied if the New York long arm statute is satisfied.").  Cases analyzing the long-arm statute are therefore applicable to the Court's analysis.

Ltd. ("SSBT").  *Id.*  SSBT used the correspondent bank account to "facilitate international financial transactions," including the transaction in issue, and JVW brought suit against SSBT seeking to recover losses incurred from SSBT's unauthorized use of the transferred funds to purchase stock on JVW's behalf.  *Id.* at 404.  When SSBT moved to dismiss the complaint on the basis that it was not subject to the Court's personal jurisdiction, "as it is a Bahamian bank with no contacts with New York" and "has no offices, telephone listing, or personnel in New York," the Court denied the motion.  The Court held that SSBT's one-time use of a New York correspondent account to facilitate the transaction giving rise to JVW's claims was, by itself, sufficient to subject SSBT to the Court's jurisdiction.  *See id.* at 404-405.  The same is true here: even if the Banks have no offices, personnel, or other business contacts in the United States, they nevertheless subjected themselves to the specific jurisdiction of its courts by using U.S. bank accounts to carry out the disputed transfers.[11]

The Second Circuit's decision in *Licci v. Lebanese Canadian Bank*, as advised by the New York Court of Appeals, also supports jurisdiction over the Banks.  The plaintiffs in *Licci* suffered injuries, or had family members that were injured or killed, as result of rocket attacks allegedly carried out by the terrorist organization Hizballah, in Israel.  732 F.3d at 165-66. The plaintiffs brought suit against a Lebanese bank ("LCB"), based on allegations that LCB used its U.S. correspondent bank account to process dollar transfers and wire funds abroad, which facilitated Hizballah's terrorist activity.  *Id.* at 166.  The court found that it had jurisdiction over

---

[11]     The Bankruptcy Court attempted to distinguish *Correspondent Services* by explaining that the defendant there used its "account in New York to facilitate international business transactions," including the unauthorized purchase and delivery of the securities that gave rise to the cause of action.  (App. 287 (Dec. at 20).)  The fact that the defendant in *Correspondent Services* generally used its account on other occasions was immaterial to the Court's conclusion, however, as it explicitly held that "the single purposeful act of transferring . . . funds to New York constitute[d] the 'transaction of business'" from which the "cause of action directly ar[ose].  As such, [the defendant] 'transacts business' in New York that justifies the exercise of long-arm jurisdiction[.]"  *Correspondent Servs.*, 120 F. Supp. 2d at 404-05.  Even if the number of times the Banks used the correspondent account was relevant in the specific personal jurisdiction inquiry (it is not), the Bankruptcy Court offers zero guidance to future courts as to how many transactions would be sufficient.

LCB because LCB purposefully availed itself of New York's laws through its use of a New York correspondent bank account to allegedly give rise to the physical injuries and deaths in issue.  *Id.* at 171.

Contrary to the view of the Bankruptcy Court,[12] the circumstances here present an even stronger basis on which to find jurisdiction than in *Licci*.  In *Licci*, the cause of action arose only indirectly from the defendant-bank's New York contacts, because "the specific harms suffered by plaintiffs flowed not from [the bank's] alleged support of a terrorist organization, but rather from rockets."  *Id.* at 169.  Here, the relationship between the Banks' contacts with the United States and the Committee's claims is direct and not dependent upon intervening actions of third parties or other extrinsic events.

The Bankruptcy Court relied on *Rushaid v. Pictet & Cie* as support for its holding that the Banks' contacts with the United States were too attenuated to impart specific jurisdiction. (App. 281 (Dec. at 14 (citing *Rushaid v. Pictet & Cie*, 2014 N.Y. Misc. LEXIS 3888, at *8 (N.Y. Sup. Ct. Aug. 26, 2014)).)  *Rushaid*, however, is factually inapposite.  *Rushaid* involved litigation over an elaborate scheme of kickbacks and bribes orchestrated by certain non-party employees of the plaintiff.  2014 N.Y. Misc. LEXIS 3888, at *2.  The non-party employees had created a separate company, "TSJ," which opened an account at Pictet, a private Swiss bank.  *Id.* The plaintiff alleged that the non-party employees instructed vendors to wire bribe money to a New York correspondent bank account held by Pictet, and then to credit the TSJ account.  *Id.*

---

[12]     The Bankruptcy Court found that *Licci* was inapposite because "[u]nlike the Defendants' conduct here, . . . the defendant in *Licci* repeatedly used a correspondent account which was integrally related to the unlawful conduct at issue in the lawsuit."  (App. 285 (Dec. at 18).)  Although it is true that the defendant foreign bank in *Licci* used its New York correspondent bank account "dozens of times" to effect its unlawful activities, this does not recast the well-established legal precedent—***thoroughly cited within the Licci decision***—that a "single transaction" is sufficient to establish specific jurisdiction when it is sufficiently related to the cause of action at issue.  The court in *Licci* looked to the multiplicity of transfers as evidence that the foreign bank's transactions with the United States were not "by mistake" or a mere "coincidence."  *Id.* at 168.  In this case, the absence of any mistake or coincidence in the Banks' transactions with the United States is equally established, just through different facts—*e.g.*, the Banks' affirmative requests to use the U.S. bank accounts.

The plaintiff brought suit against Pictet, alleging, among other things, civil conspiracy—but did not bring suit against the parties that actually orchestrated the scheme and directed the transfers. The court dismissed for lack of personal jurisdiction over the Swiss bank, finding that the use of its correspondent accounts in the United States was "passive," as it merely received funds that were directed and transferred by other parties. *Id.* at *4.

In stark contrast here, the Committee brings its claims against the very parties who, through multiple volitional acts, directed the funds to U.S. accounts. The Banks affirmatively structured the Placement Agreements and the mechanics of the payment to flow through the U.S. banking system, thereby "purposefully avail[ing] [themselves] of the privilege of conducting activities within [the forum] . . . thus invoking the benefits and protections of its laws." *Correspondent Servs.*, 120 F. Supp. 2d at 404; *see also Eldesouky*, 2014 WL 7271219 at *8; *Parke-Bernet Galleries, Inc. v. Franklyn*, 256 N.E. 2d 506, 509 (N.Y. 1970) ("[t]he mere fact that the defendant was able to arrange to conduct his extensive and purposeful activity in New York without having to physically come here does not enable him to avoid the jurisdiction of our courts.").

The Bankruptcy Court also cited *Pramer S.C.A. v. Abaplus International Corp.*, 76 A.D.3d 89 (N.Y. App. Div. 2010), which is similarly inapplicable. The plaintiff in *Pramer* attempted to assert jurisdiction over a Panamanian corporation that allegedly deposited bribe money into a New York bank account purportedly controlled by the plaintiff's CEO. *Id.* at 96-97. The court refused to find jurisdiction under these circumstances, finding that the defendant's transfer of funds into a New York account controlled by someone else—namely the niece of the plaintiff's CEO, "about whom there [were] no allegations"—was insufficient to subject the **defendant** to jurisdiction in New York. *Id.* In contrast, here, the Banks owned or controlled the

very accounts that received the disputed transfers and affirmatively directed the funds to those accounts.

In sum, the Bankruptcy Court's holding that the Committee failed to establish minimum contacts over the Banks is at odds with well-settled precedent and not supported by the case law that the Bankruptcy Court relied upon.[13]

**B.    The Bankruptcy Court Erred In Concluding That the Committee's Claims Against the Banks Did Not "Arise From" the Banks' Minimum Contacts.**

The Bankruptcy Court concluded that the Committee's claims did not arise from the Banks' contacts with the United States because the claims also depend on additional facts that are unrelated to these contacts.  For example, with respect to the preference claim, which the Bankruptcy Court only mentioned in a footnote, the Bankruptcy Court said that the claim did not ripen until Arcapita later filed for bankruptcy and, thus, the transfers of funds to the Banks were not themselves actionable.  (App. 288 (Dec. at 21 n.12).)  Similarly, the Bankruptcy Court concluded that the Committee's breach of contract and turnover claims were based not simply on the transfers of money to the Banks, but rather on the Banks' "subsequent refusal to return money to Arcapita."  (App. 287 (Dec. at 20).)

The Bankruptcy Court's analysis is incorrect as a matter of law.  To satisfy the requirement that claims "arise from" a defendant's contacts with the forum, a plaintiff "need only demonstrate that, 'in light of all of the circumstances, there [is] an articulable nexus or substantial relationship between the business transaction and the claim asserted.'"  *Wilson v.*

---

[13]    The Bankruptcy Court also relied on language from the Supreme Court's *Burger King* decision that a defendant will not be subject to personal jurisdiction in a forum "solely as a result of random, fortuitous, or attenuated contacts."  (App. 280 (Dec. at 13 (quoting *Burger King*, 471 U.S. at 475)).)  The Banks' contacts with the United States, however, can hardly be considered random, fortuitous, or attenuated.  As detailed herein, and alleged by the Committee in its complaints, the Banks' use of the U.S. bank accounts to complete the Placements was purposeful, calculated, and central to the harm that the Committee seeks to remedy, thus giving rise to specific jurisdiction over the Banks.

*Dantas*, 128 A.D.3d 176, 184 (N.Y. App. Div. 2015) (quoting *Licci v. Lebanese Canadian Bank, SAL*, 20 N.Y.3d 327, 339 (2012)).[14]  The New York Court of Appeals has "consistently held that ***causation is not required***, and that the inquiry under the statute is ***relatively permissive***." *Id.* (emphasis added).  As such, a plaintiff must merely surpass "the minimum requirement of 'a related transaction and the legal claim such that the latter is not completely unmoored from the former.'" *Id.*

   Here, an inextricable nexus exists between the Banks' activity in the United States and the claims underlying these actions.  The Committee's claims for the avoidance of preferential transfers, for example, arise squarely out of the Banks' use of the U.S. bank accounts.  Indeed, the transfers from Arcapita's U.S. bank account to those designated by the Banks constitute the very preferential transfers that the Committee seeks to avoid.  The Committee's causes of action for breach of contract and turnover of estate property also arise directly out of the transfer of funds between the U.S. bank accounts, as the funds themselves are the "property" that Arcapita asks the Banks to turn over under section 542 of the Bankruptcy Code and recover as damages for breach of contract.

   On these facts, the Bankruptcy Court should have concluded that the Committee's claims are plainly not "unmoored" from the Banks' minimum contacts and, thus, satisfied the test for specific jurisdiction.  *Licci*, 20 N.Y.3d at 339, 341.

---

[14] In *Bank Brussels Lambert*, for example, the plaintiff-foreign bank lent money to an out-of-state third party through its U.S. branch in reliance on the defendant's actions in Puerto Rico, which, unbeknownst to the plaintiff, were fraudulent.  171 F.3d at 783.  The court held there to be sufficient relatedness to exercise personal jurisdiction over the defendant because the disbursement of funds "was the first step in the process that generated the ultimate economic loss to [the plaintiff]."  *Id.* at 792.

### C.     The Bankruptcy Court Erred In Concluding That Tadhamon Is Subject to a Different Jurisdictional Inquiry Than BisB.

The Bankruptcy Court erroneously held that even if it could exercise specific jurisdiction over BisB, it could not exercise jurisdiction over Tadhamon because Tadhamon did not own the U.S. bank account that it used to carry out the Placements.  This conclusion is flawed.  That Tadhamon does not itself maintain a correspondent bank account in the United States does not render its use of the U.S. banking system in connection with the Placements any less "purposeful" than BisB's.  Subjecting BisB, but not Tadhamon, to the personal jurisdiction of the Bankruptcy Court would elevate form over substance and make little sense from a policy perspective, as it would allow foreign defendants to use the U.S. banking system to engage in unlawful activity without any fear of answering for their conduct in a U.S. court.

Moreover, although the Bankruptcy Court did not reach the issue (*see* App. 279 (Dec. at 12 n.7)), it could have applied the same jurisdictional analysis to Tadhamon that it applied to BisB on the basis that either HSBC Bank or Khaleeji was acting as Tadhamon's agent in connection with the Placements.  Under NY CPLR § 302(a), a court may exercise personal jurisdiction over a foreign defendant where the defendant either, "in person or through an agent," transacted business in the state giving rise to the cause of action.  NY CPLR § 302(a).  "To be considered an agent for jurisdictional purposes, the alleged agent must have acted in the state for the benefit of, and with the knowledge and consent of the non-resident principal."  *Cutco Indus., Inc. v. Naughton*, 806 F.2d 361, 366 (2d Cir. 1986) (internal quotations omitted) (citing cases).  As demonstrated by the clear designations on the Placement Agreements, Tadhamon specifically deputized Khaleeji and HSBC Bank to receive the challenged transfers on Tadhamon's behalf in New York, and then transfer those funds to Tadhamon's bank account in Bahrain.  (App. 022 (Tadhamon Compl. ¶ 28); App. 066-69 (Rashdan Decl., Exs. B, C).)  On these facts, Khaleeji

- 18 -

and HSBC Bank fit squarely within the Second Circuit's definition of an agent, and the Bankruptcy Court could have exercised specific personal jurisdictional over Tadhamon based on their use of the U.S. bank accounts.

   **D.   Exercising Personal Jurisdiction Over the Banks Would Not Offend Traditional Notions of Fair Play and Substantial Justice.**

        Although not addressed by the Bankruptcy Court in its decision, the jurisdictional analysis must also assess whether the exercise of personal jurisdiction over a defendant is reasonable, consistent with "traditional notions of fair play and substantial justice." *Asahi*, 480 U.S. at 113.  The Second Circuit has identified five factors that have to be considered in a "reasonableness" inquiry:  "(1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the states in furthering substantive social policies." *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, ("*BBL II*"), 305 F.3d 120, 129 (2d Cir. 2002) (quotation and citation omitted).

        These factors support the Court's otherwise constitutional exercise of personal jurisdiction over the Banks.  The Bankruptcy Court has a strong interest in adjudicating claims that arise under the Bankruptcy Code, and the Committee has a strong interest in obtaining convenient and effective relief.  *See Chais*, 440 B.R. at 281 (in action brought by trustee on behalf of creditors, finding that "[t]he United States has a strong interest in applying the provisions of its bankruptcy code.").[15]  Moreover, the Bankruptcy Court is by far the most

---

[15]        *See also U.S. Lines, Inc. v. GAC Marine Fuels Ltd. (In re McLean Indus. Inc.)*, 68 B.R. 690, 699 (Bankr. S.D.N.Y. 1986) (finding that United States had strong interest in adjudicating the dispute as it "arises solely under its [bankruptcy] laws and concerns a vital protection provided by federal statute to those who seek to reorganize.") (internal citation and quotation omitted); *cf. Eldesouky*, 2014 WL 7271219, at *9 ("New York has an interest in adjudicating cases related to 'banking activity to ensure that its system is not used' to 'nefarious ends.'") (quoting *Licci*, 732 F.3d at 174).

efficient forum in which to adjudicate these claims, given its detailed familiarity with Arcapita and its business dealings.  Any potential burden imposed on the Banks is outweighed by these considerations.[16]

      As such, the Committee satisfied both prongs of the jurisdictional analysis, and the Court erred in dismissing its claims.

## II.    THE BANKRUPTCY COURT ABUSED ITS DISCRETION IN DENYING THE COMMITTEE'S REQUEST FOR JURISDICTIONAL DISCOVERY.

      In addition to erroneously dismissing the complaints, the Bankruptcy Court also abused its discretion in refusing to allow the Committee to engage in limited, narrowly tailored jurisdictional discovery.  Courts in this Circuit routinely order discovery to allow the plaintiff an opportunity to discover facts that would support its allegations of jurisdiction.  *See, e.g.*, *Arnold Graphics Indus. Inc. v. Indep. Agent Ctr. Inc.*, 775 F.2d 38, 39 (2d Cir. 1985) (ruling on motion to dismiss "[a]fter giving Arnold an opportunity to conduct discovery on the jurisdiction[al] issue[s]"); *Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2d Cir. 1981) (holding that in deciding motion to dismiss for lack of personal jurisdiction, district court has considerable procedural leeway and may permit discovery); *Aerotel, Ltd. v. Sprint Corp.*, 100 F. Supp. 2d 189, 198 (S.D.N.Y. 2000) (defendant's "motion to dismiss for lack of personal jurisdiction and improper venue is denied, without prejudice, subject to renewal after sufficient jurisdictional discovery has taken place.").

      Here, the Committee should be entitled to seek documents and deposition testimony regarding, among other things, the Banks' decision to utilize the U.S. banking system

---

[16]    *See, e.g.*, *Chais*, 440 B.R. at 281; s*ee also BBL II*, 305 F.3d at 129-30 (noting that "[e]ven if forcing the defendant to litigate in a forum relatively distant from its home base were found to be a burden, the argument would provide defendant only weak support, if any, because the conveniences of modern communication and transportation ease what would have been a serious burden only a few decades ago.") (internal quotation and citation omitted).

to carry out the Placement transactions.  Contrary to the Bankruptcy Court's conclusion, this discovery may indeed "yield evidence as to personal jurisdiction."  (App. 288 (Dec. at 21).)  The Committee may find, for example, evidence of emails, meetings, or phone calls in which representatives of the Banks explained their desire to utilize U.S. bank accounts for the transactions and/or delivered specific directions to Arcapita on when and where to transfer the funds.  Such evidence may alter the Bankruptcy Court's conclusion that the Banks were mere passive users of the U.S. banking system and, thus, support the exercise of jurisdiction.

The Bankruptcy Court's failure to give the Committee any opportunity to conduct such limited and targeted jurisdictional discovery of the Banks was an abuse of its discretion.

## III.  THE BANKRUPTCY COURT ERRED AS A MATTER OF LAW IN DISMISSING THE COMMITTEE'S COMPLAINTS "WITH PREJUDICE."

Despite concluding that it was "powerless to proceed to an adjudication" of the merits of the Committee's claims due to its lack of personal jurisdiction over the Banks (App. 290 (Dec. at 23 n.14)), the Bankruptcy Court did just that, entering an order pursuant to which "the Complaint is dismissed in its entirety *with prejudice*."  (App. 293 (BisB Order at 2) (emphasis added); App. 296 (Tadhamon Order at 2) (emphasis added).)  This was an error as a matter of law.

It is well-settled that a dismissal "for lack of jurisdiction" is not "an adjudication on the merits."  *See, e.g.*, *Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 507, n.4 (2d Cir. 1994) ("a dismissal for want of subject matter or personal jurisdiction is not a decision on the merits"); *see also* Fed. R. Civ. P. 41(b) (addressing involuntary dismissals and stating that any dismissal, "except one for lack of jurisdiction," operates as an adjudication on the merits).  Consequently, when a court dismisses a complaint for lack of personal jurisdiction, it *must* do so "without prejudice."  *See Smith v. United States*, 554 F. App'x 30, 32 (2d Cir. 2013) (summary

order) (holding that district court improperly dismissed claims "with prejudice" because "a dismissal for want of personal jurisdiction is without prejudice"); *Global Gold Min., LLC v. Ayvazian*, No. 13-4759-CV, 2015 WL 1881361, at *4 (2d Cir. Apr. 27, 2015) (summary order) ("because the arbitral award requires us to find no personal jurisdiction, we cannot . . . dismiss the claim with prejudice").[17]

   Because the Bankruptcy Court granted the motions to dismiss solely on the basis that it lacked personal jurisdiction over the defendant-appellees, the Federal Rules of Civil Procedure and relevant case law required that such dismissals be without prejudice to the Committee's ability to recommence these litigations in this or another forum at a later date under circumstances supporting jurisdiction.  Accordingly, the orders must be amended to either (i) expressly state that they were without prejudice, or (ii) clarify that the Committee is not precluded from bringing its claims against the defendant-appellees in another jurisdiction or in the Bankruptcy Court under different jurisdictional circumstances.

---

[17] *See also Vandor, Inc. v. Militello*, 301 F.3d 37, 38-39 (2d Cir. 2002) ("[A]bsent jurisdiction federal courts do not have the power to dismiss with prejudice."); *Nafziger v. McDermott Int'l, Inc.*, 467 F.3d 514, 520 (6th Cir. 2006) ("[T]his circuit's caselaw instructs that even if the district court had been correct in concluding that it lacked personal jurisdiction over [the defendants], the court's dismissal on that ground should have been without, not with, prejudice."); *Intera Corp. v. Henderson*, 428 F.3d 605, 620 (6th Cir. 2005) ("Based upon a plain reading of Fed. R. Civ. P. 41(b), and the facts of this case, we hold that the district court clearly erred when it dismissed Plaintiffs' action for lack of personal jurisdiction 'with prejudice.'"); *Hollander v. Sandoz Pharm. Corp.*, 289 F.3d 1193, 1216 (10th Cir. 2002) ("the district court should not have dismissed the Hollanders' claim against Sandoz, Ltd. with prejudice. Its [personal] jurisdictional ruling did not address the merits of the Hollanders' allegations as to Sandoz, Ltd., and, as a result, the claim against Sandoz, Ltd. should have been dismissed without prejudice to filing in an appropriate forum"); *Posner v. Essex Ins. Co.*, 178 F.3d 1209, 1221 (11th Cir. 1999) ("The district court erred when it dismissed claims against Salem with prejudice on jurisdictional grounds; we affirm the dismissal of those counts for which it lacked personal jurisdiction but instruct the district court to dismiss those claims without prejudice."); *EF Operating Corp. v. Am. Bldgs.*, 993 F.2d 1046, 1048-49 (3d Cir. 1993) (noting that "a dismissal for lack of personal jurisdiction" in contrast to a grant of summary judgment, "is a dismissal without prejudice"); *Webber v. Michela*, 633 F.2d 518, 519 (8th Cir. 1980) ("Because we believe that the district court was without personal jurisdiction over the defendants, we affirm the dismissal of the action. This dismissal, however, is without prejudice."); *Seaweed, Inc. v. DMA Prod. & Design & Mktg. LLC*, 219 F. Supp. 2d 551, 554 (S.D.N.Y. 2002) ("A dismissal for lack of jurisdiction does not operate on the merits and therefore should not issue with prejudice.") (citing *Baker v. Carr*, 369 U.S. 186, 199–200 (1962)).

## CONCLUSION

For the foregoing reasons, the Committee respectfully asks this Court to reverse the orders of the Bankruptcy Court dismissing the adversary proceedings and remand them to the Bankruptcy Court for further proceedings.


Respectfully submitted,

New York, New York                    /s/ Andrew M. Leblanc
Dated:  July 16, 2015                 Dennis F. Dunne
                                      Evan R. Fleck
                                      Andrew M. Leblanc
                                      MILBANK, TWEED, HADLEY & M^CCLOY LLP
                                      28 Liberty Street
                                      New York, New York  10005-1413
                                      (212) 530-5000

                                      *Attorneys for the Official Committee of Unsecured
                                      Creditors of Arcapita Bank B.S.C.(c), et al.*

## CERTIFICATE OF COMPLIANCE

This brief complies with the page limitation of Rule 7.1(c) of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York because this bankruptcy appeal brief does not exceed 25 pages.

Dated:  July 16, 2015

/s/ Andrew M. Leblanc

Andrew M. Leblanc

*Attorney for the Official Committee of Unsecured Creditors of Arcapita Bank B.S.C.(c), et al.*

## CERTIFICATE OF SERVICE

I hereby certify that on July 16, 2015, a true and correct copy of the foregoing document was served upon all parties via the Court's CM/ECF system and/or electronic mail.

Dated:  July 16, 2015

_/s/_ Andrew M. Leblanc

Andrew M. Leblanc

*Attorney for the Official Committee of Unsecured Creditors of Arcapita Bank B.S.C.(c), et al.*