John A. Bicks (JB3496)
Lani A. Adler (LA8166)
K&L GATES LLP
599 Lexington Avenue
New York, NY 10022
(212) 536-3900

Counsel for Appellees Bahrain Islamic Bank and
Tadhamon Capital, B.S.C.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
OFFICIAL COMMITTEE OF UNSECURED          :
CREDITORS OF ARCAPITA BANK B.S.C.(c),    :
et al.,                                   :
                                          :
                  Appellant,              :
                                          :        15-cv-03828 (GBD)
            against                       :
                                          :
BAHRAIN ISLAMIC BANK,                     :
                                          :
                  Appellee.               :
---------------------------------------------------------:
OFFICIAL COMMITTEE OF UNSECURED          :
CREDITORS OF ARCAPITA BANK B.S.C.(c),    :
et al.,                                   :
                                          :
                  Appellant,              :
                                          :        15-cv-03829 (GBD)
            against                       :
                                          :
TADHAMON CAPITAL, B.S.C.,                 :
                                          :
                  Appellee.               :
-----------------------------------------------------------X

**ON APPEAL FROM THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK (LANE, J.)**

IN RE ARCAPITA BANK B.S.C.(c), *ET AL.*, BANKR. CASE NO. 12-11076

**<u>BRIEF FOR APPELLEES</u>**

## TABLE OF CONTENTS

Preliminary Statement .................................................................................................. 1

The Facts ...................................................................................................................... 3

Argument ...................................................................................................................... 8

I.   THE BANKRUPTCY COURT PROPERLY FOUND THAT BISB'S AND
     TADHAMON'S SAME-DAY, ONE-TIME USE OF CORRESPONDENT BANK
     ACCOUNTS TO RECEIVE, FOR NO MORE THAN SEVERAL HOURS, FUNDS
     TRANSFERRED BY ARCAPITA, PURSUANT TO WHOLLY BAHRAINI
     AGREEMENTS, DID NOT MAKE OUT A PRIMA FACIE CASE OF SPECIFIC
     JURISDICTION ...................................................................................................... 8

     A.   The Standard ................................................................................................. 8

     B.   The Committee Has Failed To Meet Its Burden of Establishing a Prima Facie Case
          of Personal Jurisdiction ............................................................................... 10

          1.   Personal Jurisdiction May Not Be Based on Arcapita's Transfers, or on
               BisB's and Tadhamon's Use of Correspondent Bank Accounts as
               Arcapita's Agent ................................................................................ 12

          2.   The Committee's Exclusion of the Overarching Bahraini Context of the
               Transactions is Wrong; The Bankruptcy Court Properly Focused on The
               Totality of The Circumstances ........................................................... 14

          3.   The Committee's Claims Are Not Sufficiently Related to BisB's and
               Tadhamon's Use of the Correspondent Accounts ............................... 15

          4.   Due Process Precludes The Exercise of Personal Jurisdiction In These Cases . 18

II.  THE BANKRUPTCY COURT DID NOT ABUSE ITS DISCRETION IN DENYING
     JURISDICTIONAL DISCOVERY ....................................................................... 22

III. SINCE THERE IS NO OTHER JURISDICTION IN THE U.S. THAT COULD
     EXERCISE PERSONAL JURISDICTION OVER BISB OR TADHAMON,
     DISMISSAL WITH PREJUDICE WAS PROPER ................................................ 23

Conclusion ................................................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Absolute Activist Master Fund, Ltd. v. Ficeto,*
 No. 09 Civ. 8862 (GBD), 2013 WL 1286170 (S.D.N.Y. Mar. 28, 2013) .........................10, 18

*Angeln GMBH & Co. KG v. Bernuth Lines, Ltd.,*
 No. 10 Civ. 4820 (GBD), 2012 WL 1080300 (S.D.N.Y. Mar. 29, 2012) ..............................22

*Aquiline Capital Partners LLC v. Finarch LLC,*
 861 F.Supp.2d 378 (S.D.N.Y. 2012).........................................................................................20

*In re Arcapita Bank B.S.C.(c),*
 529 B.R. 57 (Bankr. S.D.N.Y. 2015)................................................................................ *passim*

*Asahi Metal Indus. Co., Ltd. v. Superior Ct.*
 480 U.S. 102, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987)..........................10, 12, 18, 19, 20, 21, 22

*Baptichon v. Nevada State Bank,*
 304 F.Supp.2d 451 (E.D.N.Y. 2004), *aff'd,* 125 Fed. Appx. 374 (2d Cir. 2005) ...................15

*Best Van Lines, Inc. v. Walker,*
 490 F.3d 239 (2d Cir. 2007).....................................................................................................22

*Burger King Corp. v. Rudzewicz,*
 471 U.S. 461, 105 S.Ct. 2174, 85 L.Ed.2d 2452 (1985)...........................11, 15, 18, 19, 20, 21

*Chew v. Dietrich,*
 143 F.3d 24 (2d Cir. 1998).................................................................................................18, 19

*Community Fin. Grp. v. Stanbic Bank Ltd.,*
 No. 14 cv 5216 (DLC), 2015 WL 4164763 (S.D.N.Y. Jul. 10, 2015)....................9, 13, 16, 18

*Cont'l Field Serv. Corp. v. ITEC Int'l, Inc.,*
 894 F.Supp. 151 (S.D.N.Y. 1995).............................................................................................15

*Correspondent Services Corp. v. J.V.W. Investments, Ltd.,*
 120 F.Supp.2d 401 (S.D.N.Y. 2000).................................................................................17, 18

*Daimler AG v. Bauman,*
 134 S.Ct. 746, 197 L.Ed.2d 624 (2014)...........................................................................11, 21, 23

*DirecTV Latin America, LLC v. Park 610, LLC,*
 691 F.Supp.2d 405 (S.D.N.Y. 2010)...................................................................................15, 16

*Eldesouky v. Aziz,*
 No. 11-cv-6986 (JLC), 2014 WL 7271219 (S.D.N.Y. Dec. 9, 2014)................................17, 18

*Eternal Asia Supply Chain Mgmt. (USA) Corp. v. Chen,*
 No. 12 Civ. 6390, 2013 WL 1775440 (S.D.N.Y. Apr. 25, 2013)..........................................22

*First Union Nat'l Bank v. Paribas,*
 135 F.Supp.2d 443 (S.D.N.Y. 2001)........................................................................................21

*Fischbarg v. Doucet,*
 9 N.Y. 3d 375, 849 N.Y.S.2d 501, 880 N.E.2d 22 (2007)......................................................12

*Goodyear Dunlop Tires Operations, S.A. v. Brown,*
 __ U.S. __, 131 S.Ct. 2846, 180 L.Ed.2d 796 (2011)............................................................11

*Helicopteros Nacionales de Columbia, S.A. v. Hall,*
 466 U.S. 408, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984).........................................................11

*In re Hellas Communications (Luxembourg) II SCA,*
 524 B.R. 488 (Bankr. S.D.N.Y. 2015).....................................................................................23

*Hollander v. Sandoz Pharm. Corp.,*
 289 F.3d 1193 (10th Cir. 2002) ...............................................................................................24

*Hollaway v. Brush,*
 220 F.3d 767 (6th Cir. 2000) ...................................................................................................24

*Intera Corp. v. Henderson,*
 428 F.3d 605 (6th Cir. 2005) ...................................................................................................24

*Ixotic AG v. Kammer,*
 No. 09-cv-4345 (NG), 2015 WL 270028 (E.D.N.Y. Jan. 21, 2015) ....................13, 15, 16, 18

*Jazini v. Nissan Motor Co., Ltd.,*
 148 F.3d 181 (2d Cir. 1998)..................................................................................................9, 22

*Keeton v. Hustler Magazine, Inc.*
 465 U.S. 770, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984).........................................................11

*Kernan v. Kunz-Hastings, Inc.,*
 175 F.3d 236 (2d Cir. 1999).....................................................................................................15

*Licci v. Lebanese Canadian Bank (SAL),*
 20 N.Y.3d 327, 960 N.Y.S.2d 695, 984 N.E.2d 893 (2012)...........................................2, 3, 13

*Licci v. Lebanese Canadian Bank, SAL,*
 732 F.3d 161 (2d Cir. 2013)................................................................................................ *passim*

*Mashreqbank PSC v. Ahmed Hamad, Al Gosaibi & Bros. Col,*
    23 N.Y.3d 129, 989 N.Y.S.2d 458, 12 N.E.3d 456, 460 (2014)................................................21

*Metropolitan Life Ins. Co. v. Robertson-Ceco Corp.,*
    84 F.3d 560 (2d Cir. 1996)......................................................................10, 15, 18

*Palermo v. Laser Spine Institute,*
    24 N.Y.2d 3d 370, 998 N.Y.S.2d 720, 23 N.E.3d 988 (2014)................................................14

*Penguin Group (USA) Inc. v. Am. Buddha,*
    609 F.3d 30 (2d Cir. 2010)......................................................................9

*Picard v. Chais,*
    440 B.R. 274 (Bankr. S.D.N.Y. 2010)......................................................20

*Picard v. Cohmad Secs. Corp.,*
    418 B.R. 75 (Bankr. S.D.N.Y. 2009).........................................................9

*Picard v. Maxam,*
    460 B.R. 106 (Bankr. S.D.N.Y. 2011).......................................................10

*Posner v. Essex Ins Co.,*
    178 F.3d 1209 (11th Cir. 1999) ..............................................................24

*Pramer S.C.A. v. Abadus Internat'l Corp.,*
    76 A.D.3d 89, 907 N.Y.S.2d 154 (1st Dept. 2010)..........................................14, 15

*Rabbi Jacob Joseph School v. Allied Irish Banks, P.L.C.,*
    No. 11-cv-05801, 2012 WL 3746220 (E.D.N.Y. Aug. 27, 2012) ...........................20

*Robinson v. Overseas Military Sales Corp.,*
    21 F.3d 502 (2d Cir. 1994) (all quoted in Appellant's Br. ) ...................................24

*RSM Prod. Corp. v. Fridman,*
    643 F.Supp.2d 382 (S.D.N.Y. 2009), *aff'd*, 387 Fed. Appx. 72 (2d Cir. 2010) ......................22

*Rushaid v. Pictet & Cie,*
    No. 652375/11, 2015 WL 4226466 (N.Y.Sup., Aug. 26, 2014)...............................14

*Sikhs for Justice v. Nath,*
    893 F.Supp.2d 598 (S.D.N.Y. 2012).........................................................23

*Societe Generale v. Florida Health Sciences Ctr., Inc.,*
    No. 03 Civ. 5615 (MGC), 2003 WL 22852656 (S.D.N.Y. Dec. 1, 2003)........................16

*SPV OSUS Ltd .v. UBS AG, et al.,*
    No. 15-cv-619 (JSR), 2015 WL 4394955 (S.D.N.Y. July 20, 2015).......................9, 14, 18, 24

*In re Stillwater Capital*,
    851 F.Supp.2d 556 (S.D.N.Y. 2012).................................................9

*In re Terrorist Attacks*,
    714 F.3d 659 (2d Cir. 2013)..........................................................9

*In re Terrorist Attacks on Sept. 11, 2001*,
    538 F.3d 71 (2d Cir. 2008)............................................................9

*Universal Trading & Inv. Co., Inc. v. Credit Suisse (Guernsey) Ltd.*,
    560 Fed. Appx. 52 (2d Cir. 2014)................................................23

*Universal Trading & Inves. Co., Inc. v. Tymoshenko*,
    No. 11 Civ. 7877 (PAC), 2012 WL 6186471 (S.D.N.Y. Dec. 12, 2012) ...............21

*Walden v. Fiore*,
    __U.S.__, 134 S.Ct. 1115, 188 L.Ed.2d 12 (2014).....................11, 12, 13

*World-Wide Volkswagen Corp. v. Woodson*,
    444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980)..........................9

## Statutes

Article 353(a) of the Bahraini Civil Law ...........................................4

CPLR 302(a)(1) ....................................................................2, 13

## Preliminary Statement

The facts in this case are not in dispute:  Appellant sues to recover one-time, one-day

transfers made by the Bahraini debtor to the Bahraini Appellees, pursuant to agreements

negotiated, performed and executed in Bahrain, and governed by Bahraini law.  The only

question on this appeal is whether the Appellees' one-time, one-day use of New York

correspondent bank accounts to hold the monies transferred by the debtor, for a matter of hours

(before the monies were routed the same day to Bahrain), by itself, constitutes sufficient

purposeful availment of the U.S. forum to predicate specific jurisdiction. The Appellees, Bahrain

Islamic Bank ("BisB") and Tadhamon Capital B.S.C. ("Tadhamon"), oppose the appeal of The

Official Committee of Unsecured Creditors of Arcapita Bank B.S.C.(c) (the "Committee"), and

submit that in its highly detailed 23 page decision, the Bankruptcy Court (Hon. Sean H. Lane)

correctly determined that the Committee failed to meet its burden of making out a prima facie

case of personal jurisdiction over BisB or Tadhamon. [1]

Appellant desperately seeks to fabricate constitutionally adequate "minimum contacts"

by highlighting Arcapita's one-time transfer of monies on a single day, to correspondent bank

accounts in New York, which in Tadhamon's case, was not even an account maintained by

Tadhamon but rather by its third-party bank.  In focusing only on BisB's and Tadhamon's one-

time, one-day passive receipt of Arcapita's transfers into New York correspondent bank

accounts, the Committee's unsupportable appeal contravenes the touchstone directive in personal

---

[1] The Committee filed two separate adversary proceedings in the Bankruptcy Court, one against BisB and one against Tadhamon.  Judge Lane wrote one decision addressing both actions because "the motions [to dismiss for lack of personal jurisdiction] raise the same issues." *In re Arcapita Bank B.S.C.(c)*, 529 B.R. 57, 60 (Bankr. S.D.N.Y. 2015) (APP 269).  Judge Lane's decision is cited in this brief both by reference to the published decision and its location in the Joint Appendix submitted by Appellant (APP __).  Both actions are now before the Court as related cases and the Committee filed a single "joint appellate brief for both appeals."  Appellant Br. at 1n.1. Accordingly, Appellees BisB and Tadhamon likewise submit one joint brief, in support of affirmance of Judge Lane's decision in the Bankruptcy Court dismissing the actions brought by the Committee against BisB and Tadhamon.

jurisdiction jurisprudence to examine "the totality of the circumstances;" improperly excludes

any consideration of the "quality and nature" of BisB's and Tadhamon's contacts with the United

States; attributes the actions of Arcapita to BisB and Tadhamon; affirmatively misstates the law -

- baldly asserting, for example, that "the number of times [BisB and Tadhamon each] used the

correspondent account" is not relevant, Appellant Br. at 13n.11; conclusorily (and erroneously)

asserts that BisB's and Tadhamon's use of the correspondent accounts is "at the very root" of

these actions; and fudges the due process "reasonableness" analysis -- by failing to address the

fact that no U.S. resident was impacted (or was alleged to have been impacted) by the

momentary receipt of funds in the New York correspondent bank accounts.

In *Licci v. Lebanese Canadian Bank, (SAL)*, 20 N.Y.3d 327, 339, 960 N.Y.S.2d 695, 702,

984 N.E.2d 893 (2012), the New York Court of Appeals specified that, under CPLR 302(a)(1),

purposeful availment is shown where a complaint alleges "a foreign bank's repeated use of a

correspondent account in New York on behalf of a client -- in effect, a 'course of dealing'...."

*See Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 168 (2d Cir. 2013) (noting that the

New York Court of Appeals "found both the frequency and deliberate nature of [the defendant

foreign bank's] use of its correspondent account [was] determinative" and "focused on the

allegations that [the defendant foreign bank] used its New York correspondent account 'dozens'

of times 'to effect its support of Shahid and shared terrorist goals,' not 'once or twice by

mistake.' " (*quoting Licci,* 20 N.Y.2d at 340, 960 N.Y.S.2d at 703, 984 N.E.2d at 901)).  By

contrast, here, not only were the correspondent bank accounts used to receive monies only on a

single day, for one transaction, in BisB's case; and for two same-day transfers, in Tadhamon's,

but the complaints expressly alleged that the transactions at issue *were not part of any course of*

*dealing*.  BisB Compl. ¶ 25, (APP 007) Tadh. Compl. ¶ 23, (APP 021).  Unlike the situation in

2

the *Licci* case, where the defendant's "dozens" of uses of the correspondent bank account was itself alleged to constitute actionable terrorist financing, *see* 20 N.Y.S.2d at 340, 960 N.Y.S.2d at 703, 984 N.E.2d at 901, here there is no analogous allegation in the complaints that BisB's and Tadhamon's one-day receipt of monies transferred into the correspondent bank accounts was itself actionable.  As Judge Lane found, the Committee's alleged harm arose not from BisB's and Tadhamon's receipt of Arcapita's transfers into the New York correspondent accounts but from the set-offs they took, in Bahrain, as permitted by Bahraini law.

The Facts

The facts are set forth in Judge Lane's decision, *In re Arcapita Bank B.S.C.(c) v. Bahrain Islamic Bank, et al.*, 529 B.R. 57, 60-63 (Bankr. S.D.N.Y. 2015) (APP 269-273).  Arcapita, the debtor, and BisB and Tadhamon, are each Bahraini entities, each headquartered in Bahrain. Compl. ¶¶ 12-13(APP 005); Tadh. Compl. ¶¶12-13(APP 019).  Neither BisB or Tadhamon has or ever has had an office, staff, telephone number, real estate or other property or business presence in the United States; and neither advertises, or solicits business or clients in the United States.[2]

Each of the claims against BisB and Tadhamon is alleged to be based upon breach of a "Placement Agreement."  Both the Placement Agreement between BisB and Arcapita, and that between Tadhamon and Arcapita, was negotiated, signed and performed in Bahrain and expressly provided that it was to be governed by Bahraini law.[3]  Bahraini law explicitly permits set-off, even where the debts set off are different or result from different transactions or

---

[2] Declaration of Mohammed Ebraim Mohammed in Support of Motion to Dismiss of Defendant Bahrain Islamic Bank, executed Nov. 13, 2013, ("Mohammed Dec.") ¶ 2 (APP 034); Declaration of Waleed Rashdan in Support of Motion to Dismiss of Defendant Tadhamon Capital B.S.C., executed Nov. 15, 2013 ("Rashdan Dec.") ¶ 2 (APP 051).
[3] Mohammed Dec. ¶ 5 & Ex. 4, ¶ 12 (APP 034, 041); Rashdan Dec. ¶ 13 & Ex. A ¶7.1 (APP 054, 061).

3

agreements.[4] Mohammed Dec. ¶ 13 & Ex. B (APP 036, 047).  The Tadhamon Placement

Agreement additionally provided that "[t]he parties hereto submit to the jurisdiction of Kingdom

of Bahrain courts for the purpose of any proceedings arising out of or in connection with this

Agreement." Rashdan Dec. Ex. A at ¶ 7.2 (APP061).

Under the BisB Placement, Arcapita made a single transfer from its correspondent bank

account in New York to a correspondent bank account BisB maintained in New York.  BisB

Compl. ¶¶ 27-28 (APP 008).  In Tadhamon's case, since Tadhamon had no correspondent bank

account in the U.S., Arcapita made the one-day transfer to a correspondent bank account

maintained by Tadhamon's Bahraini Bank, Khaleeji Commercial Bank, in New York.  Tadh.

Compl. ¶¶ 27-28 (APP 022); Rashdan Dec. ¶ 7 (APP 053).  The funds Arcapita transferred into

these correspondent bank accounts were immediately transferred, the same day, to BisB's and

Tadhamon's respective bank accounts in Bahrain. *Id.*

The Complaints alleged that under each Placement Agreement, Arcapita appointed BisB

and Tadhamon, respectively, as its agent with respect to the Placement transactions, and with

respect to taking all actions in making the investments for Arcapita pursuant to the Placement

Agreements, including with respect to transferring monies.[5]  Further, each complaint specified

---

[4] Specifically, Article 353(a) of the Bahraini Civil Law provides: "A debtor has a right to a set-off of that which he owes to his creditor against that which such creditor owes to him, even when the causes giving rise to the two debts are different, provided that they are both for a sum of money or fungibles of a like nature and quality, that they are not in dispute and that they are due and may be sued for." Mohammed Dec. ¶ 13 & Ex. B (APP 036, 047).

[5] BisB Compl. ¶¶23-24 (APP 007); Tadh. Compl. ¶ 24 (0021).  The BisB Placement Agreement specified that as Arcapita's agent, BisB was to "arrange payment and collection of funds on behalf of [Arcapita] and is hereby authorized as such Agent to arrange the contracts and to receive and to deliver the goods and to execute and deliver any endorsements, assignments or any other instruments of transfer which it deems necessary in connection with any individual transaction in respect of which it is instructed to act." Mohammed Dec. Ex. A ¶ 9 (APP 041).  The BisB Placement Agreement also provided that Arcapita "shall transfer to the Agent [BisB] such funds to enable the Agent to purchase the commodities on behalf of [Arcapita];" and that "[o]nce such payment reaches the Agent's account, the Agent shall complete the purchase of the commodities and notify [Arcapita] of such purchase whereupon title to the commodities shall pass to [Arcapita]..." *Id.* ¶¶4.3-4.4 (APP 040).  As Arcapita's agent, Tadhamon was to "arrange for payment and collection of funds on behalf of [Arcapita] and [Tadhamon] is hereby authorized to execute and deliver any instruments or transfers which are necessary in connection therewith." Rashdan Dec. Ex. A, ¶ 5.4 (APP 060).

that the Placement transactions were not part of a course of dealing. The BisB placement was "not part of the ordinary course of [Arcapita's and BisB's] business," BisB Compl. ¶ 25 (APP 007); and the two same-day transfers in the Tadhamon Placement transaction at issue "marked the first time in the parties' relationship that they had ever executed such a Placement Agreement." Tadh. Compl. ¶¶ 15, 23 (APP 018, 021).

Pursuant to its Placement Agreement, on March 14, 2012, the same day that Arcapita transferred the payment to the BisB correspondent bank account in New York, BisB purchased non-U.S. commodities for Arcapita through a London broker. BisB Compl ¶ 27 (APP 008); Mohammed Dec. ¶ 10 (APP 035). Similarly, Tadhamon made investments in non-U.S. treasury securities for Arcapita at the time Arcapita transferred the monies to its Bahraini bank's correspondent account in New York. Tadh. Compl. ¶¶ 27-28 (APP 022); Rashdan Dec. ¶ 7 (APP 052-053). Both Placement Agreements contemplated that BisB and Tadhamon would return the amounts Arcapita had invested, minus a fee, to Arcapita, on specified future maturity dates. BisB Compl. ¶ 24 (APP 007); Tadh. Compl. ¶ 24 (APP 021).

As alleged in the Complaints, Arcapita owed BisB and Tadhamon each certain amounts under separate, wholly different agreements, which amounts were similar to what BisB and Tadhamon each owed Arcapita under the Placement Agreements.[6] Accordingly, as explicitly permitted under Bahraini law, BisB and Tadhamon each set off the amount it owed to Arcapita under the Placement Agreements against the amount each was owed by Arcapita.[7]

The Committee has sued for the amounts that BisB and Tadhamon set off. Neither BisB or Tadhamon filed a proof of claim in the Arcapita bankruptcy or otherwise consented to the Bankruptcy Court's jurisdiction.

---

[6] BisB Compl. ¶¶ 16-17, 20 (APP 006); Tadh. Compl. ¶¶ 15, 19, 21 (APP 020-21); Rashdan Dec. ¶ 18 (APP 055).
[7] BisB Compl. ¶ 34 (APP 009); Mohammed Dec. ¶¶ 13-14 & Ex. B (APP 036, 047); Rashdan Dec. ¶ 18 & Ex. F (APP 055, 076); Tadh. Compl. ¶¶ 38, 40 (APP 024).

In the Bankruptcy Court, the Committee filed adversary proceeding complaints against BisB and Tadhamon each for breach of contract, turnover, avoidance of a preferential transfer, violation of the automatic stay, and claims disallowance.  BisB Compl. ¶ 1 (APP 003); Tadh. Compl. ¶ 1 (APP 017).  BisB and Tadhamon each moved to dismiss the respective complaints on the grounds that the Bankruptcy Court lacked personal jurisdiction; that the Committee's claims were barred by the presumption against territoriality; and under the doctrine of international comity because the Placement Agreement transactions were between Bahraini parties, pursuant to agreements negotiated, executed and performed in Bahrain, and subject to Bahraini law -- with no substantive connection to the United States.  Included in BisB's and Tadhamon's motion papers were affidavits from senior officers of BisB and of Tadhamon confirming that neither had any business (or other) presence in the United States; explaining that the Placement Agreements each had with Arcapita were executed, negotiated and performed in Bahrain; that Bahraini law explicitly authorized the set-offs each took with respect to the amounts Arcapita owed to them; and attaching a SWIFT transfer document showing that the funds Arcapita transferred to BisB were then sent, the same day, to BisB's account in Bahrain.[8]

Neither Complaint contained any allegations at all to support general jurisdiction, and the Committee effectively admitted it had not alleged a prima facie case for general jurisdiction.  *See* 529 B.R. at 65n.4; (APP 277 n.4).[9]  BisB and Tadhamon argued that the Committee had failed to make a prima facie showing of specific jurisdiction because no facts were alleged demonstrating the requisite minimum contacts or that either BisB or Tadhamon had purposefully availed itself of conducting activities in the United States.

---

[8] Reply Declaration of Abdul Razan Addul in Further Support of BisB Motion to Dismiss, executed Feb. 28, 2014 ("Abdul Reply Dec.") ¶ 2 & Ex. A. (BisB Record on Appeal Ex. 7, Docket No. 18).
[9] Committee's Objection to BisB's Motion to Dismiss the Complaint at 8n.6 (Designation No. 4, Docket No. 14, in BisB Record on Appeal); Committee's Objection to Tadhamon's Motion to Dismiss at 8n.6 (Designation No. 4, Docket No. 14, in Tadhamon Record on Appeal).

Following extensive briefing and an oral argument of approximately two hours, on April 28, 2015, the Bankruptcy Court granted BisB's and Tadhamon's motions to dismiss for lack of personal jurisdiction in a single opinion addressing both complaints.[10]  The Bankruptcy Court specifically found that "Tadhamon's use of a third party's correspondent bank account [was] insufficient to establish personal jurisdiction," noting that "Tadhamon made a conscious decision to forego maintenance of a correspondent bank account in the United States and has clearly not benefitted from the privilege of doing business here under these circumstances."  529 B.R. at 66 (APP 279).  Examining BisB's use of the correspondent bank account, the Bankruptcy Court found that the one-time transfer from Arcapita's New York bank account to BisB's correspondent bank account was "a transitory intermediate step," insufficient to predicate specific jurisdiction, in a transaction that began with the negotiation and signing of the Placement Agreement in Bahrain between the Bahraini parties and ended with the funds transferred to Bahrain on the same day that Arcapita transferred them to the correspondent bank account in New York.  529 B.R. at 67 (APP 279-280).  The Bankruptcy Court squarely rejected the Committee's contention -- now its central argument on this appeal -- that BisB's and Tadhamon's alleged designation of the New York accounts to receive Arcapita's one-day transfers constituted purposeful availment of the United States banking system, noting that "it was Arcapita that actually transferred the funds to the correspondent accounts;" and that the passive receipt of funds does not, especially where all the significant aspects of the transaction occur out of the forum, predicate jurisdiction.  529 B.R. at 67-68 (APP 280-281).  The Bankruptcy Court held that BisB's and Tadhamon's alleged instructions to Arcapita to transfer

---

[10] Because it granted the motions to dismiss for lack of personal jurisdiction, the Bankruptcy Court found it unnecessary to address the extraterritoriality and comity arguments BisB and Tadhamon also made.  529 B.R. at 73 & n.14 (APP 290).  However, the Bankruptcy Court explicitly noted that "those alternative arguments for dismissal raise serious concerns about the Committee's claims here."  *Id.*

funds into the correspondent bank accounts, without more, was too attenuated to support specific jurisdiction, and did not provide a substantial enough connection with the United States -- such that neither BisB or Tadhamon could reasonably foresee being haled into court in the United States in connection with the Placement Agreements, which "were executed in Bahrain and provide that they are to be governed by the laws of Bahrain." 529 B.R. at 68 (APP 282).

The Bankruptcy Court explicitly distinguished the cases on which the Committee relied below and now bases its appeal, noting that in *Licci*, the foreign bank "repeatedly used a correspondent account which was integrally related to the unlawful conduct at issue in the lawsuit." 529 B.R. at 69-70 (APP 283-285).

The Bankruptcy Court exercised its discretion to deny the Committee's request to take jurisdictional discovery to establish general jurisdiction because the Committee "offered no information to support [its] contention that jurisdictional discovery would yield evidence as to personal jurisdiction," and because BisB and Tadhamon submitted declarations stating that they do not have offices, staff or telephone numbers in the U.S., do not do or solicit business or solicit clients, or advertise in the U.S. 529 B.R. at 72-73 (APP 288-290).

Argument

I.   **THE BANKRUPTCY COURT PROPERLY FOUND THAT BISB'S AND TADHAMON'S SAME-DAY, ONE-TIME USE OF CORRESPONDENT BANK ACCOUNTS TO RECEIVE, FOR NO MORE THAN SEVERAL HOURS, FUNDS TRANSFERRED BY ARCAPITA, PURSUANT TO WHOLLY BAHRAINI AGREEMENTS, DID NOT MAKE OUT A PRIMA FACIE CASE OF SPECIFIC JURISDICTION**

A.   **The Standard**

The Court reviews de novo the lower court's dismissal for lack of personal jurisdiction. Appellant concurs that it is obligated to make a prima facie showing that jurisdiction exists. *Licci*, 732 F.3d at 167; Appellant Br. at 9.  Such a prima facie showing "entails averring facts

8

that, if proven, suffice to establish jurisdiction over the defendants." *Penguin Group (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 35 (2d Cir. 2010).  While the pleadings and supporting materials are construed in the light most favorable to plaintiff, *Licci*, 732 F.3d at 167, the Court is not to "draw argumentative inferences in the plaintiff's favor," *In re Terrorist Attacks on Sept. 11, 2001*, 538 F.3d 71, 93 (2d Cir. 2008); or "rely on conclusory statements without any supporting facts, as such allegations would 'lack the factual specificity necessary to confer jurisdiction.' " *Community Fin. Grp. v. Stanbic Bank Ltd.*, No. 14 cv 5216 (DLC), 2015 WL 4164763, at *4 (S.D.N.Y. Jul. 10, 2015) (*quoting Jazini v. Nissan Motor Co., Ltd.*, 148 F.3d 181, 185 (2d Cir. 1998)).  "[R]esolving all doubts in the plaintiff's favor is not the same as blindly crediting all allegations regardless of their factual support." *SPV OSUS Ltd .v. UBS AG, et al.*, No. 15-cv-619 (JSR), 2015 WL 4394955, at *3 (S.D.N.Y. July 20, 2015) (internal citation omitted).  Further, as Judge Lane noted, where, as here, a "defendant rebuts plaintiffs' unsupported allegations with direct, highly specific, testimonial evidence regarding a fact essential to jurisdiction -- and plaintiffs do not counter that evidence -- the allegation may be deemed refuted." *In re Stillwater Capital*, 851 F.Supp.2d 556, 567 (S.D.N.Y. 2012).

Where a "foreign defendant has not consented to jurisdiction by filing a proof of claim in the bankruptcy case, the plaintiff must show that 'the foreign defendant has the requisite minimum contacts with the United States at large' to satisfy Fifth Amendment due process." *Picard v. Cohmad Secs. Corp.*, 418 B.R. 75, 79 (Bankr. S.D.N.Y. 2009) (internal citation omitted).  "The foreseeability that is critical to due process…[necessitates] that the defendant's conduct and connection with the forum…are such that he should reasonably anticipate being haled into court there." *In re Terrorist Attacks*, 714 F.3d 659, 673 (2d Cir. 2013) (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d

490 (1980)). "Courts look for 'circumstances, or a course of conduct, from which it is proper to infer an intention to benefit from and thus submit to the laws of the forum....'" *Absolute Activist Master Fund, Ltd. v. Ficeto*, No. 09 Civ. 8862 (GBD), 2013 WL 1286170, at \*10 (S.D.N.Y. Mar. 28, 2013) (internal citation omitted).

To determine whether it has personal jurisdiction over a foreign defendant, the Court undertakes a two-step inquiry: first, it must determine whether the defendant has " 'the requisite minimum contacts with the United States at large.' " *Picard v. Maxam*, 460 B.R. 106, 117 (Bankr. S.D.N.Y. 2011) (internal citation omitted). If such minimum contacts exist, the Court then "conducts a 'reasonableness' inquiry to determine whether its exercise of jurisdiction will offend 'traditional notions of fair play and substantial justice.' " *Id.* (quoting *Asahi Metal Indus. Co., Ltd. v. Superior Ct.* 480 U.S. 102, 113, 107 S.Ct. 1026, 1033, 94 L.Ed.2d 92 (1987) (internal citation omitted)). *See Licci*, 732 F.3d at 168.

**B.    The Committee Has Failed To Meet Its Burden of Establishing a Prima Facie Case of Personal Jurisdiction**

The requisite "minimum contacts" must have a basis in "some act by which the defendant purposefully avails itself of the privileges of conducting activities within the forum..., thus invoking the benefits and protections of its laws." *Asahi*, 480 U.S. at 109, 107 S.Ct. at 1030 (internal citation omitted). Accordingly, personal jurisdiction requires that "the contacts proximately result from actions by the defendant *himself* that create a 'substantial connection' with the forum State." *Asahi*, 480 U.S. at 109, 107 S.Ct. at 1030 (internal citation omitted) (emphasis in original).[11]

---

[11] *See Metropolitan Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 567 (2d Cir. 1996) (the due process requirement "protects a person without meaningful ties to the forum state from being subjected to binding judgements within its jurisdiction. By requiring 'fair warning' that an individual's activities in a state may subject him to suit there, the Due Process Clause protects that person's liberty interest and 'gives a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance

"Minimum contacts" are established by a showing of either "specific jurisdiction" or "general jurisdiction." *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 414-16 and nn. 8-9, 104 S.Ct. 1868, 1872-73, 80 L.Ed.2d 404 (1984). Specific jurisdiction exists where

> the defendant has "purposefully directed" his activities at residents of the forum, *Keeton v. Hustler Magazine, Inc.* 465 U.S. 770, 774, 104 S.Ct. 1473, 1478, 79 L.Ed.2d 790 (1984), and the litigation results from alleged injuries that "arise out of or relate to" those activities, *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414, 104 S.Ct. 1868, 1872, 80 L.Ed.2d 404 (1984).

*Burger King,* 471 U.S. at 472-73, 105 S.Ct. at 2182. General jurisdiction, on the other hand, exists only in a forum in which the defendant is incorporated or has its principal place of business or otherwise has "affiliations with the [forum that] are so 'continuous and systematic as to render it essentially at home in the forum State.' " *Daimler AG v. Bauman*, 134 S.Ct. 746, 761-62, 197 L.Ed.2d 624 (2014) (*quoting Goodyear Dunlop Tires Operations, S.A. v. Brown*, __ U.S. __, 131 S.Ct. 2846, 2851, 180 L.Ed.2d 796 (2011)). The Committee effectively admits that it has not alleged or established a prima facie case of general jurisdiction over either BisB or Tadhamon. App. Br. at 10 n.8.[12]

Specific jurisdiction turns on the relationship "among the defendant, the forum and the litigation." *Walden v. Fiore*, __U.S.__, 134 S.Ct. 1115, 1122, 188 L.Ed.2d 12 (2014). The plaintiff must demonstrate that its claim "arises out of or relates to the defendant's contacts with the forum" such that "the defendant purposefully availed itself of the privilege of doing business in the forum and could foresee being haled into court there." *Licci*, 732 F.3d at 170 (internal quotations omitted).

---

as to where that conduct will and will not render them liable to suit.' ") (*quoting Burger King Corp. v. Rudzewicz,* 471 U.S. 461, 471-72, 105 S.Ct. 2174, 2182, 85 L.Ed.2d 2452 (1985).

[12] Given the unrefuted affidavits submitted by senior executives of BisB and Tadhamon, showing that neither does or solicits business, or solicits clients in the United States or has any offices, personnel, or phone numbers in the United States, it is not conceivable that any jurisdictional discovery in this matter could meet *Daimler's* requirement for general jurisdiction. *See* Point II, *infra*.

Here, the Committee has sought to manufacture the purposeful availment requisite to establishing specific personal jurisdiction by exclusively relying on its lone allegation with respect to BisB, that Arcapita made its one transfer from its correspondent bank account to BisB's correspondent account in New York, "at [BisB's] direction," BisB Compl. ¶ 28, (APP 008); and with respect to Tadhamon, which did not even have its own correspondent bank account in New York, that Arcapita transferred "funds from its account at JPMorgan Chase Bank in New York to an account designated by Tadhamon at HSBC Bank in New York." Tadh. Compl. ¶ 28 (APP 022). These allegations do not make out constitutionally sufficient minimum contacts.

1.  **Personal Jurisdiction May Not Be Based on Arcapita's Transfers, or on BisB's and Tadhamon's Use of Correspondent Bank Accounts as Arcapita's Agent**

First, these "contacts" are not BisB's or Tadhamon's, but Arcapita's -- since Arcapita made the transfers from its New York account. BisB's and Tadhamon's alleged direction to Arcapita to transfer Arcapita's single payment for a few hours, on one day, to correspondent accounts in New York was undertaken by each *as Arcapita's agent*, as explicitly set forth in the Placement Agreements, and indeed such direction was necessarily given by BisB and Tadhamon in Bahrain where the Placement Agreements were executed and began. Specific jurisdiction requires that "the contacts proximately result from actions taken by the defendant *himself* that create a 'substantial connection' with the forum state." *Asahi*, 480 U.S. at 109, 107 S.Ct at 1030 (internal citations omitted; emphasis in original). Minimum contacts "must arise out of contacts that the 'defendant *himself*' creates with the forum state." *Walden* 134 S.Ct at 1122 (emphasis in original) (internal quotation omitted). *See Fischbarg v. Doucet*, 9 N.Y. 3d 375, 383, 849 N.Y.S.2d 501, 508, 880 N.E.2d 22, 29 (2007) ("a plaintiff may not rely on his own activities within the State, rather than on defendant's *independent* activities to invoke long-arm

jurisdiction.") (internal citations omitted; emphasis in original).  As the Supreme Court has instructed, "the plaintiff cannot be the only link between the defendant and the forum.  Rather it is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him….a defendant's relationship with a plaintiff or third party, standing alone, is an insufficient basis for jurisdiction….Due process requires that a defendant be haled into court in a forum State based on his own affiliation with the State, not based on the 'random, fortuitous, or attenuated' contacts he makes by interacting with other persons affiliated with the State." *Walden*, 134 S.Ct. at 1123.

Because "it is the defendant, not the plaintiff or third parties, who must create contacts with the forum State," *Walden*, *id.* at 1126, the plaintiff's forum connections to the defendant "may not be attributed to the defendant or 'decisive' in the jurisdictional analysis." *Id.* Accordingly, BisB's and Tadhamon's one-time designation of accounts in New York to receive for several hours only, *as Arcapita's agent*, monies Arcapita transferred, which monies were immediately sent to Bahrain, is too attenuated and too Arcapita-dependent to predicate jurisdiction.  Such plaintiff-derived, de minimus and passive, rather than active, activity does not constitute "minimum contacts" sufficient to predicate jurisdiction. *See Community Fin. Grp.*, 2015 WL 4164763, at *4 (where defendant's use of a correspondent bank account was passive, not active, and " 'not even [the defendant's] doing' "-- such use is "adventitious," and does not "suffice to establish purposeful availment") (*quoting Licci*, 20 N.Y.3d at 338); *Ixotic AG v. Kammer*, No. 09-cv-4345 (NG), 2015 WL 270028, at *9 (E.D.N.Y. Jan. 21, 2015) ("plaintiffs' allegations that they made two wire transfers to Templeton's account after conducting all other aspects of the transaction outside of New York (or outside of the United States altogether) do not suffice to establish specific jurisdiction over [the defendant] under CPLR Section 302(a)(1)");

*Palermo v. Laser Spine Institute*, 24 N.Y.2d 3d 370, 378, 998 N.Y.S.2d 720, 727, 23 N.E.3d 988, 995 (2014) ("defendants' contacts with [the forum] at the behest of the plaintiff...cannot be used to demonstrate defendants actively projected themselves into New York."); *Pramer S.C.A. v. Abadus Internat'l Corp.*, 76 A.D.3d 89, 95, 907 N.Y.S.2d 154, 158 (1st Dept. 2010) ("The plaintiff may not rely on its own activity, or the activity of *its* agent, as a predicate for jurisdiction over the defendant.") (emphasis in original); *Rushaid v. Pictet & Cie*, No. 652375/11, 2015 WL 4226466, at *4 (N.Y.Sup., Aug. 26, 2014) ("passive receipt of funds [into a correspondent bank account] do not constitute volitional acts by defendants" demonstrating purposeful availment).

   2.   **The Committee's Exclusion of the Overarching Bahraini Context of the Transactions is Wrong; The Bankruptcy Court Properly Focused on the Totality of the Circumstances**

The Committee has improperly focused only on the ministerial and transitory (literally, hours-long) New York aspect of the Placement transactions. The Committee's myopic lens ignores the context and substance of the transactions -- which were agreed to and negotiated in Bahrain between Bahraini entities, for the purchase for Arcapita by BisB of non-U.S. commodities, and by Tadhamon, of non-U.S. treasury securities, pursuant to Bahraini law, for which Arcapita, in Bahrain, arranged for payment to be made, and which payments were routed, the same day, to Bahrain. The Committee's analysis flouts the requirement that the Court must consider "the totality of the circumstances" in determining whether the defendant has "purposefully availed" itself "of 'the privilege of doing business in' the forum state such that [it] 'could foresee being haled into court there.' " *SPV OSUS Ltd.*, 2015 WL 4394955, at *5

(quoting *Kernan v. Kunz-Hastings, Inc.*, 175 F.3d 236, 243 (2d Cir. 1999)).[13] Thus, allegations that a plaintiff made two wire transfers into a foreign defendant's New York bank account (not even a correspondent bank account) did not constitute the transaction of business in New York, where all the other aspects of the transaction occurred out of state. *Ixotic*, 2015 WL 270028, at *10. *See DirecTV Latin America, LLC v. Park 610, LLC*, 691 F.Supp.2d 405, 419-420, 423 (S.D.N.Y. 2010) (allegation that on one occasion foreign defendant gave instruction for plaintiff's funds to be wired into his bank account in New York insufficient to generate jurisdiction, where "totality of the circumstances" analysis showed that alleged misconduct involved exclusively persons outside New York).[14]

### 3. The Committee's Claims Are Not Sufficiently Related to BisB's and Tadhamon's Use of the Correspondent Accounts

To circumvent the fact that BisB and Tadhamon did not use the correspondent bank accounts dozens of times or otherwise demonstrate a purposeful course of dealing as in *Licci*, the Committee argues that BisB's and Tadhamon's alleged one-time instruction to Arcapita to transfer monies on one occasion into the New York correspondent accounts they designated is enough, by itself, to create a sufficiently substantial connection to the U.S. forum for specific jurisdiction. However, as Judge Lane noted, specific jurisdiction exists only

> where the contacts proximately result from actions by the defendant himself that create a 'substantial connection' with the forum State. *Thus where the defendant 'deliberately' has engaged in significant activities within a State...or has created 'continuing obligations' between himself and residents of the forum,* he manifestly has availed himself of the privilege of conducting business there . . . .

529 B.R. at 68 (APP 281-282) (*quoting Burger King*, 471 U.S. at 475-76, 105 S.Ct. at 2184).

---

[13] *See Metropolitan Life Ins. Co.*, 84 F.3d at 570-71 ("defendant's contacts "should not be examined separately or in isolation...courts should assess the defendant's contacts *as a whole*...This approach is more consistent with our view of the minimum contacts analysis as a contextual inquiry.") (emphasis in original).

[14] *See also Baptichon v. Nevada State Bank*, 304 F.Supp.2d 451, 458-59, 463 (E.D.N.Y. 2004), *aff'd*, 125 Fed. Appx. 374 (2d Cir. 2005); *Cont'l Field Serv. Corp. v. ITEC Int'l, Inc.*, 894 F.Supp. 151, 154 (S.D.N.Y. 1995); *Pramer S.C.A. v. Abaplus Int'l Corp.*, 76 A.D.3d 89, 96-97, 907 N.Y.S.2d 154, 159 (1st Dept. 2010).

Judge Lane rejected the Committee's argument and found that *Licci* and the other cases relied on by the Committee in which personal jurisdiction was found based on the defendant's use of an account, "all involved a greater quality of contact with the United States than are present here," 529 B.R. at 69 (APP 283); and that in *Licci* and the other cases the Committee cites, the use of the account "was integrally related to the unlawful conduct at issue in the lawsuit." 529 B.R. at 70 (APP 285). In the BisB and Tadhamon cases, by contrast, the use of the correspondent accounts was not unlawful or tied to the allegedly actionable conduct -- the set-off -- which did not occur in the U.S. As Judge Lane found, all of the Committee's claims

> are based upon the alleged setoff by the Defendants and their failure to transfer the Placement Proceeds to Arcapita upon the maturity dates. Thus, the alleged unlawful action was the Defendants' subsequent refusal to return money to Arcapita; it was not the Defendants' original receipt of these transfers under the Placement Agreements, an act which no party has alleged was improper. Thus, the one-off use of the correspondent bank account by BisB is unrelated to the set-off issue, let alone central to its adjudication.

529 B.R. at 71 (APP 287-288).

In those cases where a single transfer of funds to a bank account in New York has been deemed to confer specific jurisdiction, "there are additional contacts within the forum, including forum selection and consent to jurisdiction clauses; negotiating agreements by fax, mail, and telephone; borrowing money in New York, signing promissory notes payable in New York; and utilizing an agent in New York." *DirectTV,* 691 F.Supp.2d at 423. *See Societe Generale v. Florida Health Sciences Ctr., Inc.,* No. 03 Civ. 5615 (MGC), 2003 WL 22852656, at *4 (S.D.N.Y. Dec. 1, 2003) (collecting cases). *See, e.g., Community Fin. Grp.,* 2015 WL 4164763, at *4 (granting motion to dismiss for lack of personal jurisdiction where only one use of correspondent bank account related to the claim, and where that use "was initiated by a party other than defendant"); *Ixotic,* 2015 WL 270028, at *10 (two wire transfers by plaintiff into

defendant's bank account in New York do not suffice to establish specific jurisdiction where all other aspects of transactions occur outside the forum).

The cases on which the Committee relies are readily distinguishable.  Unlike in *Licci*, where the "frequency and deliberate nature" of [the defendant's] use of the correspondent bank account was "determinative," here the one-day, one-time use of the correspondent bank account was initiated by Arcapita, not by BisB or Tadhamon -- and, as explicitly alleged in the complaints, was *not* attendant to any established course of dealing and was not itself actionable or otherwise the direct cause of the plaintiff's harm.

As distinguished from the instant cases, in *Eldesouky v. Aziz*, No. 11-cv-6986 (JLC), 2014 WL 7271219 (S.D.N.Y. Dec. 9, 2014), the monies that defendants allegedly converted were misappropriated and retained in their personal New York bank accounts (not correspondent accounts), and at least six payments were made to them, such that the scheme involved repeated use of the New York banking system.  By contrast, the allegations in the instant cases make clear that the correspondent bank account was used once, on one day, in transactions where the monies began and ended in Bahrain.  Further, the wrong in *Eldesouky* was the defendants' retention of plaintiff's payments in the New York accounts while refusing to provide the flaxseed for which plaintiff contracted.  In the instant cases, as Judge Lane determined, the alleged wrong was the set-off taken in Bahrain; the Committee's claims did not directly arise from the transfers into the correspondent bank accounts.

Similarly, in *Correspondent Services Corp. v. J.V.W. Investments, Ltd.*, 120 F.Supp.2d 401 (S.D.N.Y. 2000), where the defendant transferred plaintiff's funds into defendant's New York brokerage account which defendant used to make an allegedly unauthorized purchase of stock for the plaintiff, it was the defendant that made the transfer into its New York account

(whereas in the instant case, Arcapita initiated the transfer in New York) to buy the securities in that account and delivered them to the plaintiff through the account. Accordingly, the court in *Correspondent Services* determined that the defendant's use of that New York brokerage account was "at the very root of the action in [that] case." 120 F.Supp.2d at 405.

Where, as here, the defendants' contacts with the forum are indubitably limited, the quantum of relatedness between the plaintiff's claims and the defendant's forum-related contacts required for specific jurisdiction is greater. *See Chew v. Dietrich*, 143 F.3d 24, 29 (2d Cir. 1998) (in case evaluating contacts with the United States, "[w]here defendant has had only limited contacts with the state it may be appropriate to say that he will be subject to suit in that state only if the plaintiff's injury was proximately caused by those contacts.").[15]

### 4.   Due Process Precludes the Exercise of Personal Jurisdiction in These Cases

In the absence of any showing by plaintiff of minimum contacts, the Bankruptcy Court had no obligation to engage in the reasonableness analysis under the Fifth Amendment -- that is, whether the assertion of jurisdiction over BisB and Tadhamon "comports with traditional notions of fair play and justice under the circumstances of the case." *Metro. Life Ins. Co.,* 84 F.3d at 567-68. *See Asahi*, 480 U.S. at 113-114, 107 S.Ct. at 1033; *Burger King*, 471 U.S. at 476-77, 105 S.Ct. at 2184-85; *Ixotic*, 2015 WL 270028, at *10 & n.9 (where insufficient allegations of minimum contacts, Due Process clause analysis is "unnecessary.").[16] Accordingly, the Committee's contention that the Bankruptcy Court erred in failing to address the due process

---

[15] *See also SPV OSUS Ltd.*, 2015 WL 4394955, at *5 (no personal jurisdiction over foreign banks that sponsored "feeder funds" which funneled monies to Madoff's company because foreign banks provided services to foreign funds, such that there was no meaningful connection between defendant's forum-directed conduct and injuries of plaintiffs, who were Madoff investors); *Absolute Activist Master Value Fund*, 2013 WL 1286170, at *11-12 (no personal jurisdiction over foreign individuals who solicited U.S. investors where plaintiff's securities fraud claims did not arise from solicitation of investors; manipulative trading was proximate cause of injury).
[16] *See Community Fin. Grp.*, 2015 WL 4164763, at *5 (where plaintiff failed to allege purposeful availment, "[t]he remainder of the personal jurisdiction inquiry...need not be reached."); *Eldesouky*, 2014 WL 7271219, n.10 (because Court determined it did not have personal jurisdiction over one defendant, "it need not reach the due process analysis as it applies to [that defendant].")

inquiry is simply wrong, since the Committee failed to make out a prima facie case of purposeful availment. Appellant Br. at 19. However, even if considered, the due process analysis further confirms that the Bankruptcy Court correctly determined it could not exercise personal jurisdiction over BisB and Tadhamon.

Assuming -- for purposes of argument only -- that BisB and Tadhamon have any such minimum contacts, the Court considers them "in light of other factors to determine whether the assertion of personal jurisdiction would comport with fair play and substantial justice." Asahi, id. (quoting Burger King, 471 U.S. at 476, 105 S.Ct. at 2174).[17] These factors may include:

> (1) the burden on the defendant that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; and (3) the plaintiff's interest in obtaining convenient and effective relief....

Licci, 732 F.3d at 170.

While the Committee never substantively analyzes it, the burden on BisB and Tadhamon is significant. Neither does or solicits business in the U.S., has offices, staff or property here; and each entered into an agreement with Arcapita, a Bahraini entity, in Bahrain, under Bahraini law, for making non-U.S. investments; and in Tadhamon's case, with the express agreement that disputes "arising out of or in connection with" its Placement Agreement would be determined in the courts of Bahrain. As the Supreme Court recognized in Asahi, "[t]he unique burdens placed upon one who must defend oneself in a foreign legal system should have significant weight in assessing the reasonableness of stretching the long-arm of personal jurisdiction over national borders." 480 U.S. at 114, 107 S.Ct. at 1033.

---

[17] "The due process analysis is basically the same under both the Fifth and Fourteenth Amendments. The principal difference is that under the Fifth Amendment the court can consider the defendant's contacts throughout the United States, while under the Fourteenth Amendment only the contacts with the forum state may be considered." Chew v. Dietrich, 143 F.3d at 28n.4.

Similarly, since the debtor, Arcapita, is not a U.S. citizen, the interests of U.S. courts are "considerably diminished," *Asahi*, *id.*, especially here where Arcapita agreed that Bahraini law, including its set-off provisions, would govern the Placement Agreements. *See Burger King*, 471 U.S. at 482, 105 S.Ct. at 2187 (a choice-of-law provision should not "be ignored in considering whether a defendant has 'purposefully invoked the benefits and protection of a State's laws' for jurisdictional purposes") (internal citation omitted); *Aquiline Capital Partners LLC v. Finarch LLC*, 861 F.Supp.2d 378, 389 (S.D.N.Y. 2012) (no personal jurisdiction where agreements at issue specified that disputes governed by Belgian, not New York, law).  Unlike the situation in *Picard v. Chais*, 440 B.R. 274 (Bankr. S.D.N.Y. 2010), on which the Committee relies, Appellant Br. at 19-20, where the foreign defendants had entered into agreements with a New York debtor providing for New York law to govern, and received monies from that New York debtor into personal U.S. bank accounts, here there is no comparable U.S. connection.  The U.S. has no interest in remedying an alleged breach of contract allegedly committed by one Bahraini entity against another, in Bahrain, pursuant to Bahraini agreements governed by Bahraini law, in transactions that were not directed to any U.S. resident.  Indeed, Bahraini courts are far better equipped to apply the governing Bahraini law, and to assess the propriety of the set-offs made by BisB and Tadhamon under it, as well as to regulate investment transactions between Bahraini entities under Bahraini law.  *See generally Rabbi Jacob Joseph School v. Allied Irish Banks, P.L.C.*, No. 11-cv-05801, 2012 WL 3746220, at *5 (E.D.N.Y. Aug. 27, 2012) (collecting cases for proposition that courts in a particular country have a public interest in adjudicating disputes to be governed by that country's laws).

Moreover, notwithstanding the Committee's kneejerk reference to the New York banking system, Appellant Br. at 19n.15, any presumption of a U.S. forum here is overcome by the fact

that the Committee, standing in the shoes of the Bahraini debtor, "is not in any practical sense seeking to litigate at home." *First Union Nat'l Bank v. Paribas*, 135 F.Supp.2d 443, 453 (S.D.N.Y. 2001) (noting that the interest of "New York, as a world financial capital….is not a trump to be played whenever a party to such a transaction seeks to use our courts for a lawsuit with little or no apparent contact with New York or the United States.")  Acceptance of the Committee's position would mean that any use, even a single passive use, of a correspondent bank account, regardless of the "totality of the circumstances" in an otherwise wholly foreign transaction, between foreign entities, for which the use of the correspondent account was not itself actionable, would create jurisdiction in New York or elsewhere in the U.S.  That is clearly not the law, and would effectively render limitless U.S. and/or New York jurisdiction with respect to any transaction that involved any use of a correspondent bank account, destroying any distinction between general and specific jurisdiction, and obviating any due process underpinning of personal jurisdiction.  "Such exorbitant exercises of …jurisdiction would scarcely permit out-of-state defendants 'to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit.' " *Daimler*, 134 S.Ct. at 761-762, 187 L.Ed.2d 624 (*quoting Burger King*, 471 U.S. at 472, 105 S.Ct. at 2182). *See Mashreqbank PSC v. Ahmed Hamad, Al Gosaibi & Bros. Col*, 23 N.Y.3d 129, 137, 989 N.Y.S.2d 458, 462, 12 N.E.3d 456, 460 (2014).  *See generally Asahi*, 480 US. at 115, 107 S.Ct. at 1034 ("Great care and reserve should be exercised when extending our notions of personal jurisdiction into the international field." (internal citation omitted)).  Even after the New York Court of Appeals ruled in *Licci*, courts in this district have acknowledged that "New York courts have long recognized that 'there are significant policy reasons which caution against the exercise of personal jurisdiction based only on …a correspondent bank account.'" *Universal Trading &*

*Inves. Co., Inc. v. Tymoshenko*, No. 11 Civ. 7877 (PAC), 2012 WL 6186471, at *3 (S.D.N.Y. Dec. 12, 2012).

As in *Asahi*, here, in view of the fundamental "international context, the heavy burden on the alien defendant[s], and the slight interests of the plaintiff and the forum state, the exercise of personal jurisdiction" by the Bankruptcy Court over BisB and Tadhamon "would be unreasonable and unfair." 480 U.S. at 116, 107 S.Ct. at 1034.

## II.    THE BANKRUPTCY COURT DID NOT ABUSE ITS DISCRETION IN DENYING JURISDICTIONAL DISCOVERY

The Bankruptcy Court's denial of the Committee's request for jurisdictional discovery is reviewed for abuse of discretion. *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 255 (2d Cir. 2007). No abuse of discretion is found in denying discovery where, as here, the plaintiff failed to make out a prima facie case of jurisdiction, *id.; see Jazini*, 148 F.3d at 186; "and discovery will not alter the jurisdictional analysis." *Angeln GMBH & Co. KG v. Bernuth Lines, Ltd.*, No. 10 Civ. 4820 (GBD), 2012 WL 1080300, at *7 (S.D.N.Y. Mar. 29, 2012). Discovery should "not be granted to allow plaintiff to engage in an unfounded fishing expedition for jurisdictional facts." *RSM Prod. Corp. v. Fridman*, 643 F.Supp.2d 382, 402 (S.D.N.Y. 2009), *aff'd*, 387 Fed. Appx. 72 (2d Cir. 2010).

The Committee asserts that discovery "may" enable it to establish specific and/or general jurisdiction. Appellant Br. at 4. Such conjecture does not provide a basis for jurisdictional discovery. Where " 'the plaintiff offers only speculations or hopes…that further connections to [the forum] will come to light in discovery,' the court should dismiss the complaint without allowing discovery." *Eternal Asia Supply Chain Mgmt. (USA) Corp. v. Chen*, No. 12 Civ. 6390, 2013 WL 1775440, at *10 (S.D.N.Y. Apr. 25, 2013) (internal citation omitted). Especially here, where the Committee offered no evidence to refute the facts contained in the affidavits submitted

22

by BisB's and Tadhamon's senior executives, discovery was properly denied. *See Sikhs for Justice v. Nath*, 893 F.Supp.2d 598, 611 (S.D.N.Y. 2012).

As Judge Lane noted, the discovery sought by the Committee could not provide additional information about the transactions at issue in this case and therefore, would have no relevance to specific jurisdiction. 529 B.R. at 72 (App 288). Likewise, with respect to general jurisdiction, in light of the Supreme Court's determination in *Daimler*, it is not plausible that discovery could generate facts to support general jurisdiction because neither BisB or Tadhamon is incorporated or has its principal place of business in the U.S. or otherwise has "affiliations…[that] are so continuous and systematic as to render it essentially at home" in the forum. 134 S.Ct. at 761, 187 L.Ed.2d 624 (internal citation omitted). Further, the Second Circuit has reiterated, after its *Licci* decision, "that the 'alleged use of a correspondent bank account [is] insufficient to support the exercise of general personal jurisdiction.' " *Universal Trading & Inv. Co., Inc. v. Credit Suisse (Guernsey) Ltd.*, 560 Fed. Appx. 52, 55 (2d Cir. 2014).

## III.   SINCE THERE IS NO OTHER JURISDICTION IN THE U.S. THAT COULD EXERCISE PERSONAL JURISDICTION OVER BISB OR TADHAMON, DISMISSAL WITH PREJUDICE WAS PROPER

The parties agree with the Bankruptcy Court that the personal jurisdiction inquiry here is whether BisB and Tadhamon have the requisite minimum contacts with the United States at large, because the Committee's claims were brought pursuant to a statute authorizing nationwide service of process. *In re Hellas Communications (Luxembourg) II SCA*, 524 B.R. 488, 507 (Bankr. S.D.N.Y. 2015). *See* Appellant Br. at 9; 529 B.R. at 64 (APP 282). Necessarily then, the Bankruptcy Court's decision constituted a determination that the Committee could not establish that either BisB or Tadhamon had minimum contacts with, or was subject to personal jurisdiction in, the United States. Accordingly, there is no other court in the United States in

which the Committee could assert its claims against BisB or Tadhamon -- such that dismissal with prejudice was warranted.

Not a single one of the cases the Committee cites for the rote proposition that dismissal for lack of personal jurisdiction is generally without prejudice, Appellant Br. at 22 & n.17, involves dismissal for lack of contacts with the United States rather than with the state in which a particular federal district court sat.  Indeed, most of those cases make the point that dismissal is without prejudice because the claims or allegations could possibly be brought in a different U.S. forum.[18]  That rationale does not apply in this case.  Absent the possibility that another court in the United States would be able to exercise jurisdiction over BisB or Tadhamon on these claims, the Bankruptcy Court properly dismissed the Committee's complaints with prejudice.[19]

---

[18] *See Hollander v. Sandoz Pharm. Corp.*, 289 F.3d 1193, 1216-17 (10th Cir. 2002) (claim "should have been dismissed without prejudice to filing in an appropriate forum); *Intera Corp. v. Henderson*, 428 F.3d 605, 621 (6th Cir. 2005) (dismissing for lack of jurisdiction without prejudice since "merely because one court does not have jurisdiction over a dispute does not necessarily mean that another court is precluded from properly exercising jurisdiction over the matter.") (*quoting Hollaway v. Brush*, 220 F.3d 767, 778 (6th Cir. 2000)); *Posner v. Essex Ins Co.*, 178 F.3d 1209, 1221 (11th Cir. 1999) (dismissal without prejudice where merits possibly may be litigated in another state); *Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 502 n.4 (2d Cir. 1994) (because dismissal for lack of personal jurisdiction is not a decision on the merits, "the plaintiff is free to institute the suit anew in [another] jurisdiction") (all quoted in Appellant's Br. at 22n.17).  *Cf. SPV OSUS*, 2015 WL 4394955, at *7 (dismissing complaint with prejudice after granting motion to dismiss for lack of personal jurisdiction).
[19] Obviously, dismissal with prejudice by the U.S. Bankruptcy Court, in and of itself, would not preclude the Committee from litigating in the courts of Bahrain.

<u>Conclusion</u>

For the foregoing reasons, the Bankruptcy Court properly dismissed the Committee's claims against BisB and Tadhamon with prejudice and denied the Committee's request to take unspecified additional jurisdictional discovery.  The Committee has not met its burden of averring facts that suffice to establish personal jurisdiction over BisB and Tadhamon. Accordingly, the appeal should be dismissed, and the Bankruptcy Court's decision affirmed in its entirety.

Dated:   New York, New York
            August 17, 2015

K&L GATES LLP


By:___/s/ Lani A. Adler_____
            Lani A. Adler (LA8166)
            John A. Bicks (JB3496)
       599 Lexington Avenue
       New York, New York 10022
       (212) 536-3900
       lani.adler@klgates.com
       john.bicks@klgates.com

       Attorneys for Appellees Bahrain Islamic Bank and
       Tadhamon Capital, B.S.C.
