# 15-cv-03828(GBD)

## United States District Court
*for the*
## Southern District of New York

_____

OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF ARCAPITA BANK B.S.C.(C), ET AL.,

*Appellant,*

—against—

BAHRAIN ISLAMIC BANK,

*Appellee.*

_____

ON APPEAL FROM THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK (LANE, J.)

IN RE ARCAPITA BANK B.S.C.(C), *ET. AL.*, BANKR. CASE NO. 12-11076

**REPLY BRIEF FOR APPELLANT**

MILBANK, TWEED, HADLEY & M^C CLOY LLP
DENNIS F. DUNNE
EVAN R. FLECK
ANDREW M. LEBLANC
28 Liberty Street
New York, New York 10005-1413
(212) 530-5000
aleblanc@milbank.com

*Attorneys for the Official Committee of Unsecured Creditors of Arcapita Bank B.S.C.(c), et al.*

## **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ............................................................................................... 1

ARGUMENT .......................................................................................................................... 2

I. THE BANKS' ONE-TIME, DELIBERATE USE OF THE U.S. BANK ACCOUNTS WAS SUFFICIENT TO SUBJECT THEM TO THE BANKRUPTCY COURT'S SPECIFIC JURISDICTION FOR CLAIMS ARISING FROM THAT USE. ........................................................................................ 2

II. THE BANKRUPTCY COURT HAD PERSONAL JURISDICTION OVER THE BANKS BASED ON THE BANKS' OWN CONDUCT, NOT ARCAPITA'S CONDUCT. ...................................................................................................................... 4

III. THE COMMITTEE'S PREFERENCE, BREACH OF CONTRACT, AND TURNOVER CLAIMS ARISE DIRECTLY FROM THE BANKS' MINIMUM CONTACTS. ................................................................................................................. 6

IV. PERSONAL JURISDICTION MAY BE EXERCISED OVER THE BANKS CONSISTENT WITH DUE PROCESS. ............................................................................ 7

V. THE DISMISSAL SHOULD HAVE BEEN WITHOUT PREJUDICE REGARDLESS OF WHETHER THE COMMITTEE COULD SUCCESSFULLY BRING ITS CLAIMS IN ANOTHER U.S. COURT AT THIS TIME. ................................................................................................................................... 9

# **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Arrowsmith v. United Press International*,
   320 F.2d 219 (2d Cir. 1963) ..................................................................................................9

*Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*,
   305 F.3d 120 (2d Cir. 2002) ..................................................................................................9

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985) ................................................................4

*Community Finance Group, Inc. v. Stanbic Bank Ltd.*,
   No. 14cv5216(DLC), 2015 WL 4164763 (S.D.N.Y. July 10, 2015) .....................................5

*Correspondent Services Corp. v. J.V.W. Investments Ltd.*,
   120 F. Supp. 2d 401 (S.D.N.Y. 2000) ...................................................................................3

*Daimler AG v. Bauman*,
   134 S. Ct. 746 (2014) ............................................................................................................9

*Eldesouky v. Aziz*,
   No. 11-CV-6986 (JLC), 2014 WL 7271219 (S.D.N.Y. Dec. 19, 2014) .................................3

*Hamilton v. Accu-Tek*,
   32 F. Supp. 2d 47 (E.D.N.Y. 1998) .......................................................................................9

*Ixotic AG v. Kammer*,
   No. 09-cv-4345 (NG), 2015 WL 270028 (E.D.N.Y. Jan. 21, 2015) ......................................5

*Licci v. Lebanese Canadian Bank, SAL ("Licci I")*,
   984 N.E.2d 893 (N.Y. 2012) ..................................................................................................7

*Licci v. Lebanese Canadian Bank, SAL ("Licci II")*,
   732 F.3d 161 (2d Cir. 2013) ..................................................................................................2

*Mashreqbank PSC v. Ahmed Hamad, Al Gosaibi & Brothers Co.*,
   12 N.E.3d 456 (N.Y. 2014) ...................................................................................................9

*Paterno v. Laser Spine Institute*,
   23 N.E.3d 988 (N.Y. 2014) ...................................................................................................5

*Picard v. Chais (In re Bernard L. Madoff Investment Securities LLC)*,
   440 B.R. 274 (Bankr. S.D.N.Y. 2010) ................................................................................8, 9

*Picard v. Cohmad (In re Bernard L. Madoff Investment Securities LLC)*,
    418 B.R. 75 (Bankr. S.D.N.Y. 2009) ............................................................................... 8

*Pramer S.C.A. v. Abaplus International Corp.*,
    76 A.D.3d 89 (N.Y. App. Div. 2010) ........................................................................... 5, 6

*Robinson v. Overseas Military Sales Corp.*,
    21 F.3d 502 (2d Cir. 1994) ............................................................................................. 9

*Rushaid v. Pictet & Cie*,
    No. 652375/11, 2014 N.Y. Misc. LEXIS 3888 (N.Y. Sup. Ct. Aug. 26, 2014),
    *aff'd* 127 A.D.3d 610 (N.Y. App. Div. 2014) ................................................................ 5

*Smith v. United States*,
    554 F. App'x 30 (2d Cir. 2013) ...................................................................................... 9

*SPV OSUS Ltd. v. UBS AG*,
    Nos. 15-cv-619 (JSR), 14-cv-9744 (JSR), 2015 WL 4394955 (S.D.N.Y. July
    20, 2015) ......................................................................................................................... 4

*Universal Trading & Investment Co., Inc. v. Tymoshenko*,
    No. 11 Civ. 7877 (PAC), 2012 WL 6186471 (S.D.N.Y. Dec. 12, 2012) ........................ 9

*Walden v. Fiore*,
    134 S. Ct. 1115 (2014) ................................................................................................ 4, 5

**PRELIMINARY STATEMENT**

As the Banks[1] acknowledge, "[t]he facts in this case are not in dispute." (Banks' Br. at 1.)  Not only are the facts alleged in the Complaints not in dispute, but they are also very simple:  the Committee seeks to recover funds that the Banks directed Arcapita to transfer to bank accounts located in New York, and the claims the Committee is pursuing arise directly from those transfers.  These straightforward facts, by themselves, form a model case for the exercise of specific personal jurisdiction over a foreign defendant in a U.S. court.  Not a single case cited by the Banks in their brief deals with similar facts and none supports dismissal.

Faced with this reality, the Banks try to obfuscate the facts—and contort the relevant law—all in an effort to downplay the extent of their relevant U.S. contacts and to minimize the importance of those contacts to this litigation.  Among other things, the Banks argue that (i) they did not purposefully avail themselves of the U.S. banking system by using U.S. bank accounts, because they used the accounts only once, rather than "dozens" of times; (ii) only Arcapita, not the Banks, had any contacts with the U.S.; (iii) the Committee's claims somehow do not "arise from" the Banks' use of the U.S. bank accounts; and (iv) it would be overly burdensome for the Banks to litigate these cases in the U.S.  For the reasons discussed herein, each of these arguments misstates the relevant law or facts (or both) and must therefore be rejected.

The Banks are also wrong that limited jurisdictional discovery was properly denied and that the adversary proceedings were properly dismissed with prejudice.  If the Court is inclined to deny jurisdictional discovery and dismiss the adversary proceedings, it must, at a minimum, direct the Bankruptcy Court to revise its order to make clear that the Committee

---

[1] All capitalized terms herein have the meaning ascribed to them in the Committee's opening brief.

retains the right to bring its claims in either (i) a foreign jurisdiction, or (ii) a U.S. court, if the facts underlying the jurisdictional analysis change.

## ARGUMENT

### I. THE BANKS' ONE-TIME, DELIBERATE USE OF THE U.S. BANK ACCOUNTS WAS SUFFICIENT TO SUBJECT THEM TO THE BANKRUPTCY COURT'S SPECIFIC JURISDICTION FOR CLAIMS ARISING FROM THAT USE.

Citing *Licci*, the Banks contend that they did not use the U.S. bank accounts at issue with sufficient "frequency" to subject themselves to the jurisdiction of a U.S. court. (Banks' Br. at 2-3.) The Banks also argue that the "totality of the circumstances" of the Placement transactions, including the Banks' location in Bahrain, the contractual choice of law provisions, and the Banks not having offices in the U.S., requires a finding that the Banks are not subject to personal jurisdiction in the U.S. Both of these arguments are unavailing.

<u>First</u>, the Banks are wrong in contending that *Licci*—or any other case—requires that a defendant use a correspondent account more than once to satisfy the minimum contacts requirement of purposeful availment. (*Id.*) In *Licci*, the court found that the defendant's use of a bank account "dozens" of times served to demonstrate its **deliberate** use of the account, as opposed to its use of the account "once or twice **by mistake**." *Licci v. Lebanese Can. Bank, SAL ("<u>Licci II</u>")*, 732 F.3d 161, 168 (2d Cir. 2013) (emphasis added) (citing *Licci v. Lebanese Can. Bank, SAL ("<u>Licci I</u>")*, 984 N.E.2d 893, 901 (N.Y. 2012)). Specifically, the court noted that the frequency of the transfers showed "desirability and a lack of coincidence" and served as circumstantial evidence that the defendant purposefully availed itself "of the privilege of doing business in the New York forum." *Id.* The court never suggested that using the bank account dozens of times, or even more than once, was a requirement for personal jurisdiction.

In this case, there is no dispute that the Banks deliberately used the bank accounts at issue to receive the placed funds, and thus, there is no concern that the funds were transferred

to the Banks' U.S. accounts by "mistake" or "coincidence." To the contrary, as the Committee's allegations make clear—and as the Banks admit in their brief—the Banks specifically selected the U.S. accounts for the Placements and affirmatively instructed Arcapita to use them for the funds transfers at issue. (Comm. Br. at 5-6; Banks' Br. at 13.) These allegations of deliberate conduct are, by themselves, sufficient to establish minimum contacts for claims relating to that conduct.[2]

This result is consistent with the decisions holding that the purposeful use of a U.S. bank account, without more, is sufficient to subject a defendant to the specific personal jurisdiction of a U.S. court. *See, e.g.*, *Correspondent Servs. Corp. v. J.V.W. Invs. Ltd.*, 120 F. Supp. 2d 401, 403 (S.D.N.Y. 2000) (one-time use of New York correspondent account to facilitate transaction giving rise to plaintiff's claims was sufficient to establish personal jurisdiction); *Eldesouky v. Aziz*, No. 11-CV-6986 (JLC), 2014 WL 7271219, at *8 (S.D.N.Y. Dec. 19, 2014) (defendant's "recei[pt] [of] Plaintiffs' money at a New York bank account suffices to establish personal jurisdiction over [defendant] . . ."). The Banks acknowledge these cases in their brief but fail meaningfully to distinguish them.[3]

---

[2]   Although the Banks argue that the frequency of transfers in a U.S. account forms a critical part of the jurisdictional inquiry, they do not offer any suggestion as to how many transfers would be enough to establish specific jurisdiction. Surely, the Banks would agree that some number short of "dozens" would suffice, but it is hard to see where a court could draw the line in a non-arbitrary way. A more practical and easier test to administer is whether the defendant deliberately used the account, thus purposefully availing itself of the U.S. banking system, not how many transfers it effectuated.

[3]   The Banks attempt to distinguish *Eldesouky* by asserting that the case involved a personal bank account, (not a correspondent account), that the defendant received six transfers in the account, and that the defendant retained the funds in the account for some period of time. None of these facts, however, formed a basis for the court's decision, which simply held that the receipt of funds was, by itself, sufficient to establish personal jurisdiction. 2014 WL 7271219, at *7. Moreover, contrary to what the Banks suggest, the defendant only received one transfer from the plaintiff into the New York account; the other transfers came from another defendant. *Id.* With respect to *Correspondent Services*, the Banks state that the defendant in that case, unlike the Banks here, physically transferred the plaintiff's funds into the defendant's U.S. account. This is not a meaningful distinction. Here, the Banks specifically directed Arcapita to transfer the funds into the U.S. accounts. The fact that the Banks did not physically press "send" on the wire transfer is irrelevant to the analysis – they told Arcapita to do so.

Second, the Banks are also wrong that the "totality of the circumstances" of the Placement transactions somehow diminishes the quality of the Banks' minimum contacts. Where a defendant has only limited contacts with the forum, courts look to whether the alleged injury to the plaintiff is sufficiently related to those limited contacts. *SPV OSUS Ltd. v. UBS AG*, Nos. 15-cv-619 (JSR), 14-cv-9744 (JSR), 2015 WL 4394955, at *5-7 (S.D.N.Y. July 20, 2015). As discussed in more detail below, here, the Banks' activity in the U.S.—its selection and use of the U.S. bank accounts—forms the very core of the Committee's claims and directly caused Arcapita's injuries. *Cf. id.* at *7 (dismissing claims where there was an "utter lack of nexus" between defendants' alleged conduct and plaintiffs' claims). As such, the Banks' contacts with the U.S. are sufficient for specific personal jurisdiction, regardless of whether other aspects of the Placement transactions occurred abroad.[4]

## II. THE BANKRUPTCY COURT HAD PERSONAL JURISDICTION OVER THE BANKS BASED ON THE BANKS' OWN CONDUCT, NOT ARCAPITA'S CONDUCT.

The Banks erroneously argue that they are not subject to personal jurisdiction in the U.S. because Arcapita made the transfers to the U.S. bank accounts, and the Banks acted as Arcapita's agents under the Placement Agreements. As a result, the Banks contend, the only relevant U.S. "contacts" belong to Arcapita, not the Banks. These arguments should be rejected as both factually inaccurate and legally untenable.

First, the fact that "Arcapita made the transfers from its New York account" is irrelevant to whether the Banks are subject to the Bankruptcy Court's jurisdiction. All that matters is whether ***the Banks themselves*** had sufficient minimum contacts with the U.S. to support jurisdiction. They plainly did. As alleged in the Complaints, the Banks (i) chose to use

---

[4] *See Walden v. Fiore*, 134 S. Ct. 1115, 1122 (2014) ("physical presence in the forum is not a prerequisite to jurisdiction") (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985)).

U.S. bank accounts to carry out the Placement transactions, (ii) directed Arcapita to transfer funds into those U.S. accounts, (iii) received the funds in those U.S. accounts, and (iv) used those U.S. accounts to further transfer the funds to Bahrain.  These are U.S. contacts that ***belong to the Banks***, not Arcapita, and are more than sufficient to subject the Banks to personal jurisdiction in the U.S.[5]

The Banks rely heavily on the Supreme Court's decision in *Walden v. Fiore*, 134 S. Ct. 1115 (2014), but this case does not support their position.  *Walden* stands for the uncontroversial proposition that "it is the defendant, not the plaintiff or third parties, who must create contacts with the forum State." *Id.* at 1126.  That is precisely what happened here.  The ***defendant-Banks***, not Arcapita (on whose behalf the Committee is pursuing these claims), selected the accounts to use and thus created their own contacts with the U.S. that form the basis for the Committee's claims.

Second, the fact that the Banks may have acted as Arcapita's "agent" under the Placement Agreements has no bearing whatsoever on the personal jurisdiction analysis.  Regardless of whether the Banks acted as Arcapita's agents, they deliberately and on their own

---

[5] The Banks cite several cases in support of their argument that their contacts with the U.S. were "de minimus and passive" (Banks' Br. at 13), and thus, insufficient for personal jurisdiction.  These cases, however, are distinguishable.  *See, e.g.*, *Cmty. Fin. Grp., Inc. v. Stanbic Bank Ltd.*, No. 14cv5216(DLC), 2015 WL 4164763, at *4 (S.D.N.Y. July 10, 2015) (no jurisdiction over bank ("Stanbic") where different defendant—against whom plaintiff brought claims of negligence and breach of fiduciary duty—requested that plaintiff transfer funds to its account at Stanbic and transfer was "adventitious[ly]" routed through Stanbic's correspondent account in the U.S.); *Ixotic AG v. Kammer*, No. 09-cv-4345 (NG), 2015 WL 270028, at *2-7, *9-10 (E.D.N.Y. Jan. 21, 2015) (no jurisdiction under the more limited bounds of N.Y. CPLR § 302(a)(1) over defaulting foreign defendants in factually complex RICO actions, as there were no allegations that the defendants (i) directed funds into the N.Y. account or (ii) "transact[] any business within the state"); *Paterno v. Laser Spine Institute*, 23 N.E.3d 988, 994-95 (N.Y. 2014) (no jurisdiction over defendant, a Florida medical facility, where New York-based plaintiff traveled to Florida for surgeries and defendant merely had post-op phone calls with New York doctors at plaintiffs' request); *Pramer S.C.A. v. Abaplus Int'l Corp.*, 76 A.D.3d 89, 96-97 (N.Y. App. Div. 2010) (no jurisdiction over defendant that allegedly deposited bribes into a New York account controlled by plaintiff's former agent where defendants did not own or control the U.S. bank account and there were no allegations that defendant affirmatively chose the location of the deposit); *Rushaid v. Pictet & Cie*, No. 652375/11, 2014 N.Y. Misc. LEXIS 3888, at *8 (N.Y. Sup. Ct. Aug. 26, 2014) , *aff'd* 127 A.D.3d 610 (N.Y. App. Div. 2014) (no jurisdiction over Swiss bank that merely received funds in U.S. account, where non-parties selected the account and directed that it be used for the transfers).

volition engaged in conduct in the U.S. giving rise to minimum contacts, and the Committee is now suing them as a result of that conduct. Not surprisingly, the Banks do not cite a single case to support their argument that a defendant is somehow not responsible for its minimum contacts with the forum while acting as a plaintiff's agent.[6] Indeed, this result would be absurd, as it would absolve all agents from *ever* being sued in the U.S. for conduct arising out of their agency. The Banks' argument must therefore be rejected.

### III. THE COMMITTEE'S PREFERENCE, BREACH OF CONTRACT, AND TURNOVER CLAIMS ARISE DIRECTLY FROM THE BANKS' MINIMUM CONTACTS.

The Banks also err in contending that the Committee's claims do not arise from the Banks' contacts with the U.S. To support their position, the Banks state that the only "allegedly actionable conduct" at issue in the litigation is the Banks' attempt to "set off" their obligations under the Placements against certain other obligations owed by Arcapita to the Banks, and this conduct happened abroad, after the transfers at issue occurred. (Banks' Br. at 16.) The Banks are simply wrong.

As an initial matter, the Banks fail to even mention the Committee's preference claims under section 547 of the Bankruptcy Code. The central, most fundamental element of any preference claim, including the Committee's preference claims against the Banks, is the pre-bankruptcy preferential transfer of funds or other property by the debtor to a creditor, which the estate has the right to recover. (*See* Comm. Br. at 17.) Here, the Committee has alleged that the very transfers from Arcapita to the Banks' chosen accounts in New York are such preferential transfers subject to avoidance. (*Id.*) The "set off" issue emphasized by the Banks is irrelevant to

---

[6] The Banks cite *Pramer*, 76 A.D.3d 89, for the general proposition that a plaintiff may not rely on the conduct of its agents to support personal jurisdiction over the defendant. (Banks' Br. at 14.) *Pramer*, however, is inapposite. In that case, a plaintiff tried to use the minimum contacts of its former, **non-party** agent to establish jurisdiction over the defendant. In other words, *Pramer* did not deal with a situation where, as here, the plaintiff's agent **was the defendant**. This is a critical and dispositive distinction.

the preference claims—it is the Banks' affirmative defense. There is simply no colorable argument (and the Banks offer none) that the Committee's preference claims do not arise from the Banks' U.S. contacts for jurisdictional purposes.

With respect to the Committee's remaining claims, including its claims for turnover under section 542 of the Bankruptcy Code and breach of contract, the Banks apply the wrong legal standard. To establish specific personal jurisdiction over the Banks, the Committee need only show that its claims are not completely "unmoored" from the Banks' minimum contacts and that "at least one element" of the claims arises from those contacts.[7] Here, the Banks' use of the U.S. bank accounts to receive the funds that are now sought to be recovered forms not only one element, but the *central* element, of the Committee's claims. (*See id.*) Indeed, the funds themselves are both the "property" of Arcapita's estate that the Committee asks the Banks to turn over under section 542 of the Bankruptcy Code and the damages that the Committee seeks to recover for breach of contract. (*Id.*) Far from being "unmoored" from the Committee's claims, the Banks' contacts are tied inextricably to them.

## IV. PERSONAL JURISDICTION MAY BE EXERCISED OVER THE BANKS CONSISTENT WITH DUE PROCESS.

The Banks wrongly contend that the potential "burden" of litigating the Committee's claims in the U.S. would be so significant as to outweigh the interests of a U.S. court in adjudicating them. To the contrary, the Bankruptcy Court's strong interests in administering Arcapita's chapter 11 estate, enforcing the U.S. Bankruptcy Code, and policing the

---

[7] *See Licci I*, 984 N.E.2d at 901 ("Not all elements of the causes of action pleaded are related to LCB's use of the correspondent account. And the specific harms suffered by plaintiffs flowed not from LCB's alleged support of a terrorist organization, but rather from rockets. Yet CPLR 302(a)(l) does not require that every element of the cause of action pleaded must be related to the New York contacts; rather, where at least one element arises from the New York contacts, the relationship between the business transaction and the claim asserted supports specific jurisdiction under the statute.").

use of the U.S. banking system far outweigh any incidental burden that its exercise of jurisdiction may impose on the Banks.

The Banks emphasize that Arcapita is not itself a "U.S. citizen," but this fact does not diminish the significant interests of the U.S. in deciding this dispute. In 2012, Arcapita and certain of its affiliates filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code in the Southern District of New York, seeking to protect, among other things, their assets and creditors located in the U.S. (*See* Comm. Br. at 4-5.) The Bankruptcy Court, which has overseen the chapter 11 cases from the beginning, and the U.S. in general, have a strong interest in adjudicating the Committee's claims and enforcing the provisions of the Bankruptcy Code. *Picard v. Chais (In re Bernard L. Madoff Inv. Sec. LLC)*, 440 B.R. 274, 281 (Bankr. S.D.N.Y. 2010) (noting that, where claims arose under U.S. bankruptcy laws and were brought on behalf of all creditors, the "United States has a strong interest in applying the provisions of the Bankruptcy Code"); *Picard v. Cohmad (In re Bernard L. Madoff Inv. Sec. LLC)*, 418 B.R. 75, 81 (Bankr. S.D.N.Y. 2009) ("[T]he United States has a strong interest in applying the fraudulent transfer and preference provisions of its Bankruptcy Code.").

The Banks' ominous warnings that the exercise of jurisdiction in this case would "render limitless" the jurisdictional reach of U.S. courts and "destroy[]" and "obviate[e]" constitutional protections are unfounded. As discussed above, the Bankruptcy Court has jurisdiction over the Banks as a result of their active—not passive—conduct in designating U.S. bank accounts for receipt of transfers, directing Arcapita to place funds in those U.S. bank accounts, and receiving and retaining those funds in violation of the U.S. Bankruptcy Code. Unlike the cases cited by the Banks where the defendant's contacts were so tangentially related to the plaintiff's claims as to trigger policy concerns, here, the transfers of funds are ***directly***

related to the Committee's claims.[8] There is nothing unfair, or even unexpected, about subjecting the Banks to the jurisdiction of a U.S. court under these circumstances.[9]

## V. THE DISMISSAL SHOULD HAVE BEEN WITHOUT PREJUDICE REGARDLESS OF WHETHER THE COMMITTEE COULD SUCCESSFULLY BRING ITS CLAIMS IN ANOTHER U.S. COURT AT THIS TIME.

The Banks' sole argument as to why dismissal with prejudice was proper is that, under the facts alleged in the Complaints, the Committee would be unable to establish personal jurisdiction over the Banks in any other U.S. court. This shortsighted argument misses the mark for two important reasons.

First, it ignores the fact that the Committee could re-file its claims in the Bankruptcy Court (or any other appropriate U.S. court) if the facts underlying the jurisdictional analysis change.[10] For example, even if the Court does not grant jurisdictional discovery,[11] the

---

[8] *Cf. Daimler AG v. Bauman*, 134 S. Ct. 746, 761-62 (2014) (lack of **general** jurisdiction over parent company where subsidiary's contacts were the sole connection to the forum state and "claims by foreign plaintiffs ha[d] nothing to do with anything that occurred or had its principal impact in [the forum]"); *Universal Trading & Inv. Co., Inc. v. Tymoshenko*, No. 11 Civ. 7877 (PAC), 2012 WL 6186471, at *3 (S.D.N.Y. Dec. 12, 2012) (lack of jurisdiction because plaintiff's allegations that transactions tangentially passed through New York banks were not substantially related to claims that the former prime minister of Ukraine was involved in a complicated bribery and money-laundering scheme involving the assets of a Ukrainian energy company); *see also Mashreqbank PSC v. Ahmed Hamad, Al Gosaibi & Bros. Co.*, 12 N.E.3d 456, 459-60 (N.Y. 2014) (dismissing claims related to currency exchange transactions on *forum non conveniens* grounds, where only connection to forum was use of clearing house account and New York had minimal interest in resolving the issue).

[9] The Banks contend that they will be burdened by the litigation because they do not solicit business in the U.S. and have no offices, staff, or property in the U.S. (Banks' Br. at 19.) Such burdens are not uncommon and are insufficient to defeat the exercise of personal jurisdiction. *See, e.g.*, *Chais*, 440 B.R. at 281 ("Courts have held that often the interests of the plaintiff and the forum in the exercise of jurisdiction will justify even the serious burdens placed on the alien defendant.") (quotation and citation omitted); *see also Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 305 F.3d 120, 129-30 (2d Cir. 2002) (discrediting foreign defendant's argument that being subject to suit in New York would impose unreasonable burden, noting "[e]ven if forcing the defendant to litigate in a forum relatively distant from its home base were found to be a burden, the argument would provide defendant only weak support, if any, because the conveniences of modern communication and transportation ease what would have been a serious burden only a few decades ago.") (internal quotation and citation omitted).

[10] *See Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 507, n.4 (2d Cir. 1994) (upon dismissal for lack of personal jurisdiction, "the plaintiff is free to institute the suit anew in a jurisdiction or under circumstances supporting jurisdiction"); *Arrowsmith v. United Press Int'l*, 320 F.2d 219, 221-222 (2d Cir. 1963) ("A dismissal for lack of [personal] jurisdiction or improper venue does not preclude a subsequent action in an appropriate forum"); *Smith v. United States*, 554 F. App'x 30, 32 (2d Cir. 2013) (summary order) (a dismissal without prejudice "does not preclude renewing those claims in a jurisdiction in which personal jurisdiction over the defendants can be obtained.").

Committee could potentially uncover, through its own investigation, additional facts to support jurisdiction over the Banks in the U.S. It is also possible that one or both Banks could, in the future, open an office in the U.S. or otherwise take actions that subject them to the general jurisdiction of U.S. courts. In either of these cases, the Committee should be able to re-file its claims against the Banks in any appropriate forum, including the Bankruptcy Court, alleging whatever new jurisdictional facts have been established.

Second, the Banks too readily dismiss the impact that a dismissal with prejudice could have on the Committee's ability to pursue its claims against the Banks in Bahrain or in another foreign jurisdiction. Neither party has submitted any evidence on whether a dismissal with prejudice could have a *res judicata* effect in these other jurisdictions. At this point, the answer to this question remains unknown. For this reason, the Court must, at a minimum, clarify that the dismissal is without prejudice to the Committee's ability to re-file its claims against the Banks in another jurisdiction outside the U.S.

## CONCLUSION

For the foregoing reasons, the Committee respectfully asks this Court to reverse the orders of the Bankruptcy Court dismissing the adversary proceedings and remand them to the Bankruptcy Court for further proceedings.

---

[11] As discussed in the Committee's opening brief, to the extent that the Bankruptcy Court determined that the Committee had not met its burden of making a *prima facie* showing of personal jurisdiction, the Bankruptcy Court should have given the Committee the opportunity to engage in limited discovery. Contrary to the Banks' admonitions regarding "unfounded fishing expeditions" (Banks' Br. at 22), the Committee seeks only limited, narrowly-tailored jurisdictional discovery. Because the personal jurisdiction analysis is necessarily "fact intensive" (*Hamilton v. Accu-Tek*, 32 F. Supp. 2d 47, 58 n.7 (E.D.N.Y. 1998)), courts in this Circuit routinely order discovery to allow the plaintiff an opportunity to discover facts that would support its allegations of jurisdiction. (*See* Comm. Br. at 20-21.) The Committee should be given the opportunity to engage in narrowly-tailored discovery to (i) identify additional facts relating to the transactions and (ii) determine whether the Banks have additional contacts with New York or elsewhere in the U.S. that would subject them to the general jurisdiction of this Court.

Respectfully submitted,

| | |
|---|---|
| New York, New York | */s/* Andrew M. Leblanc |
| Dated:  August 31, 2015 | Dennis F. Dunne |
| | Evan R. Fleck |
| | Andrew M. Leblanc |
| | MILBANK, TWEED, HADLEY & M$^{\underline{C}}$CLOY LLP |
| | 28 Liberty Street |
| | New York, New York  10005-1413 |
| | (212) 530-5000 |

*Attorneys for the Official Committee of Unsecured Creditors of Arcapita Bank B.S.C.(c), et al.*

- 11 -

# **CERTIFICATE OF COMPLIANCE**

This brief complies with the page limitation of Rule 7.1(c) of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York because this bankruptcy appeal reply brief does not exceed 10 pages.

Dated:  August 31, 2015

                                                     */s/* Andrew M. Leblanc

                                                     Andrew M. Leblanc

                                                   *Attorney for the Official Committee of*
                                                   *Unsecured Creditors of Arcapita Bank*
                                                   *B.S.C.(c), et al.*

## **CERTIFICATE OF SERVICE**

I hereby certify that on August 31, 2015, a true and correct copy of the foregoing document was served upon all parties via the Court's CM/ECF system and/or electronic mail.

Dated: August 31, 2015

                                               /s/ Andrew M. Leblanc

                                               Andrew M. Leblanc

                                               *Attorney for the Official Committee of Unsecured Creditors of Arcapita Bank B.S.C.(c), et al.*